### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY MULLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAN ORBITAL, INC., MARC BELL, GARY HOBART, JAMES LaCHANCE, STRATTON SCLAVOS, MATTHEW EBY, DANIEL STATON, PHILIP KRIM, CHRIS HOLLOD, WISDOM LU, TOMMY STADLEN, BORIS REVSIN, MICHAEL KIM, TAILWIND TWO ACQUISITION CORP., TAILWIND TWO SPONSOR LLC, and CONTINENTAL STOCK TRANSFER CORPORATION,<br><br>Defendants. | Case no.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeffrey Mullen ("Plaintiff"), on behalf of himself and all others similarly situated, by and through the undersigned counsel, allege the following for his complaint against Defendants Terran Orbital, Inc., Marc Bell, Gary Hobart, James LaChance, Stratton Sclavos, Matthew Eby, Philip Krim, Wisdom Lu, Boris Revsin, Michael Kim, Tailwind Two Acquisition Corp. ("TTAC"), Tailwind Two Sponsor LLC ("TTS"), Daniel Staton, Chris Hollod, Tommy Stadlen and Continental Stock Transfer Corporation (collectively "Defendants"):

### I.      NATURE OF THE ACTION AND OVERVIEW

1.      Plaintiff brings this class action on behalf of himself and all other similar situated persons in the United States who were non-insider owners of shares in pre-merger Terran Orbital, Inc. ("Legacy TOC") (a now publicly traded Company hereinafter referred to as "New TOC") through their employment with Legacy TOC and who were induced to vote in favor of the merger via a materially false and misleading Proxy Prospectus but later were restricted from,

or otherwise unable to, sell or dispose of their post-merger Terran Orbital ("New TOC") common stock because of the misfeasance and/or malfeasance of the Defendants named herein. The New TOC stock was itself issued in violation of the Securities Act of 1933 because it was issued from a materially false and misleading S-4 Registration Statement and Prospectus ("S-4"). Defendants' failure to timely provide Plaintiff and class members with New TOC stock which was freely tradeable on the "Effective Date" as defined in the Merger Agreement also breached a contract formed between non-insider Legacy TOC common stockholders and Legacy TOC and New TOC.

2.      In 2021, Legacy TOC and Defendant Tailwind Two Acquisition Corp. ("TTAC") agreed to merge and The Merger was affected in 2022.  The Merger terms dictated, *inter alia*, that Legacy TOC common stock would be exchanged for New TOC common stock at an agreed exchange rate.

3.      New TOC common stock shares were to be registered and issued pursuant to the terms of the Merger Agreement.  After registration and issuance on March 25, 2022, New TOC shares started trading on the New York Stock Exchange under ticker symbol "LLAP." But Plaintiff and class members did not receive the New TOC shares as provided in the terms of the Merger Agreement nor as represented in the solicitation of their consents to the Merger. Legacy TOC shareholders' consents to approve the Merger were a condition precedent to the Merger.

4.      Each individual Class member is a current or former Terran Orbital employee who was a "non-insider" and was granted and subsequently exercised employee stock options and converted same into Legacy TOC common stock well in advance of the registration of New TOC common stock. None of the class members were in the C-suite or served on Legacy TOC's board of directors and all of them were solicited to sign written consents in favor of the Merger.

5.      Legacy TOC CEO Marc Bell, and the other Legacy Terran Orbital directors named as Defendants, and Defendant Continental Stock Transfer Corporation, d/b/a Continental Stock Transfer & Trust Company ("Continental") were responsible for the implementation of execution of the exchange of Legacy TOC common stock for freely tradeable New TOC common stock which was to have occurred to allow Plaintiff and class members to have possession and control of freely tradeable New TOC common stock on the effective date of the Merger, March 25, 2022 ("IBC closing" or "initial business combination closing") and be able to sell same.

6.      While Continental's transfer of New TOC common stock to brokerage accounts was an administrative task that should have taken place on March 25, 2022 (the "Effective Date" as defined in the Merger Agreement), it took several more weeks, during which time Plaintiff and other class members were unable to sell their stock and the Terran share price fell.

7.      A Legacy TOC representative confirmed the tenor of the obligation to exchange Legacy TOC for New TOC by assuring Plaintiff and class members "once the deal closes, the accounts will hold the public company share for each Terran shareholder." In fact, the transfer agent, Defendant Continental, stated that it had set up procedures so that pre-merger TTAC Class A common stock would automatically convert to New TOC common stock which was freely tradeable. Thus, even Legacy TOC's representative confirmed and understood that the Merger Agreement's provisions for exchange of Legacy TOC for New TOC freely tradeable was intended to and would result in Plaintiff and class members receiving their freely tradeable New TOC shares "when the deal close,"(*i.e.,* the Effective Date).

8.      Neither Plaintiff nor any class members were subject to any restrictions relevant to class members' Legacy TOC common stock exchange of Legacy TOC stock for freely tradeable New TOC common stock on the date of the Merger.

9.      According to the terms of the applicable instruments, Plaintiff and the class members were to receive freely tradeable New TOC stock on the Effective Date without any further action that needed to be taken by the Legacy TOC stockholder.

10.     Terran provided no information on how class members could contact Continental or other steps to take to sell the New TOC common stock. Continental failed to exercise the requisite care and diligence required for Plaintiff and class members to get their freely tradeable New TOC stock, making the process much different than disclosed in the Proxy Prospectus.

11.     On March 29, 2022, after the IBC closing, Terran Orbital representative Hilary Hageman admitted that the process for Plaintiff and class members to get their freely tradeable New TOC stock was different than what had been disclosed in the Proxy Prospectus when Legacy TOC was soliciting votes for the Merger from Plaintiff and class members:

> I have confirmed you are not subject to a lockup.  As a former employee who is now a non-insider investor of Terran Orbital Corporation, you are also not subject to any insider trading restrictions due to trading blackouts.  Terran is using Continental Stock Transfer & Trust Company (post-closing stock transfer agent) to facilitate the transfer of all shareholder/investor pre-IPO shares to publicly tradable shares. My understanding is that Continental will be sending you correspondence (via email) in the next few days with all the information you'll need to access your post-closing publicly tradable shares (and see their value) on-line. At that time, you will be able to transfer those shares into your own personal brokerage account if you choose. From that point on, the Terran shares will be like all other public company shares you own.

Hilary Hageman's email revealed for the first time that Legacy TOC shareholders would not be given their freely tradeable New TOC common stock on the IBC closing date like the TTAC holders.

12.     On April 1, 2022, four days after trading of New TOC stock started on March 28, 2022, class members received, for the first time, an email from clientcomm@continentalstock.com (the stock transfer company) regarding how to transfer shares:

> ** *DO NOT REPLY TO THIS EMAIL, AS IT IS AN UNMONITORED EMAIL ADDRESS ** Dear XXXX / Account #YY, attached is a Welcome Letter with online access instructions to Stockholders of TERRAN ORBITAL CORPORATION. Please read the document carefully and follow the instructions to set up and access your account online.*

13.     Nothing in the S-4 subsequent proxy-prospectus disclosed the protracted process that Plaintiff and class members would need to endure to get their freely tradeable New TOC stock as reflected in the April 1, 2022 letter. Nor was there any disclosure or warning of any risk that Plaintiff and class members would not get their freely tradeable New TOC common stock on the Effective Date.

14.     In addition, when contacting Continental, class members were told there was an issue where Continental could not transfer the New TOC shares because neither Legacy TOC nor New TOC had set up the accounts properly. Continental said that resulted in an additional delay. That issue was the result of Defendants' negligence.

15.     By the time class members had access and control over their New TOC shares to sell, New TOC had lost almost half its value.

16.     In addition, Plaintiff and class members suffered loss and damages because the New TOC stock given to Plaintiff and the Class in exchange for their Legacy TOC stock was issued from a materially false and misleading Proxy Prospectus contained in a Registration Statement Form S-4 effective February 14, 2022 and thereafter supplemented.

17.     The TTAC Defendants signed the materially false and misleading Registration Statement which misrepresented the consequences of Defendants multiple modifications to the merger agreement to the merged companies' pro forma financial condition, cash proceeds to be realized from the merger, and the dilution to be suffered by Legacy TOC shareholders.

18.     The Legacy TOC Defendants breached various fiduciary duties of loyalty and care and candor owed to Plaintiff and the class directly by providing materially false and misleading information to Plaintiff and the class which interfered with their right to vote on the merger including by obtaining proxies from Plaintiff and the class which did not conform to Delaware General Corporate Law.

19.     At the end of the first week after the merger closed and New TOC stock issued, going public, over 26.7% (closing price of $7.33) of value had been wiped from the market. At the end of the second week the price had been pushed to the mid $4/share.  It is estimated that over $15-20+ million was lost by class members (who collectively held over 1.2 million shares of New TOC stock LLAP).

20.     As a result of the foregoing violations of fiduciary duties, the DGCL, the Securities Act of 1933 ("33 Act") and acts of misfeasance and malfeasance, class members suffered loss and damage. In addition, Plaintiff and class members did not receive their New TOC common stock as per representations made when their vote was solicited and proxy tendered to Legacy TOC and thereby lost their opportunity to sell their New TOC shares for the prevailing market price on the Effective Date. This class action is brought on behalf of Plaintiff and each Class Member to recover the damages they suffered by Defendants wrongful conduct and violations of law.

21.     While class members lost millions, other TOC stockholders, like Fuel Venture

Capital, were able to sell their TOC shares on the Effective Date for a substantial profit.  Indeed,

as evidenced by the screenshot below, TOC and Fuel Venture Capital ("FVC" or "Fuel")

celebrated FVC's ability to immediately liquidate their entire New TOC position as soon as New

TOC shares traded on the Effective Date.



22.     In a March 29, 2022 posting, Terran Orbital itself confirmed Fuel's excitement to dump its stock as soon as the company went public:



*See* https://terranorbital.com/terran-orbital-a-leader-in-small-satellites-goes-public-on-nyse-early-investor-fuel-vc-celebrates-an-exit/#:~:text=22-,Terran%20Orbital%2C%20a%20leader%20in%20small%20satellites%2C%20goes%20public%20on,IPO%20valuation%20of%20%241.8%20billion (last visited November 22, 2022)

## II.    **PARTIES**

23.     Plaintiff is a former employee of Terran who held shares of Terran's Legacy common stock which by terms of the Merger Agreement was to have been converted on the Effective Date into freely tradeable New TOC common stock issued from the materially false and misleading S-4, and available for Plaintiff to sell.

24.     Defendant Terran Orbital, Inc. is a Delaware corporation with its principal place of business at 6800 Broken Sound Pkwy NW Suite 200, Boca Raton, FL 33487. Terran has approximately 350 employees. The current post-merger entity known as Terran Orbital, Inc. ("New TOC") was formed by the merger of Defendant Tailwind Two Acquisitions Corp., ("TTAC") and the original Terran Orbital, Inc. ("Legacy TOC"), also a Delaware corporation.

25.     Defendant Marc Bell ("Bell") is the Chairman, CEO, and Co-Founder of Legacy TOC since March 2021.

26.     Defendant James LaChance ("LaChance") was a member of Legacy TOC's board of directors through March 2022.

27.     Defendant Stratton Sclavos ("Sclavos") was a member of Legacy TOC's board from January 2016 through March 2022.

28.     Defendant Daniel Staton ("Staton") was a director of Legacy TOC from July 2014 through March 2022 and is a current director of New TOC. He is the founder, Chairman and Managing Director of Staton Capital LLC since 2003.

29.     Defendants Bell, Hobart, Sclavos, LaChance and Staton were the directors of Legacy TOC and are hereinafter sometimes referred to as the "Legacy TOC Director Defendants."

30.     Defendant Gary Hobart ("Hobart") has been the Chief Financial Officer of Legacy TOC.  On information and belief, Hobart was tasked with overseeing financial aspects of the transaction.  Since January 2009, Hobart was a Managing Director of Beach Point Capital Management LP, an investment firm with over $15 billion in assets under management, which ultimately became a PIPE investor in Terran and after the merger held 24,119,581 shares of New TOC stock which it has been recently selling.

31.     Defendant TTAC is the predecessor of New TOC and in connection with the Merger its shares were issued to Legacy Terran shareholders through a materially false and misleading Registration Statement in violation of the '33 Act.

32.     Defendant Tailwind Two Sponsor, LLC ("TTS") is a Delaware limited liability company which was the sponsor of TTAC and in controlled by Defendant Krim.

33.     On or about December 31, 2021, TTAS owned approximately 32.15% of the issued and issuable Class A ordinary shares. TTAS paid $25,000 for 8,625,000 Class B TTAC shares. TTAS' Class B shares automatically converted into New Legacy shares on March 25, 2022 upon the closing that day of the IBC.

34.     Defendant TTS was the "sponsor" of TTAC and was one of the controlling shareholders.

35.     Defendant Tommy Stadlen was at all material time one of the controlling shareholders of TTAC.

36.     Defendants Philip Krim, Matthew Eby (CEO), Chris Hollod, Wisdom Lu, Tommy Stadlen, Boris Revsin and Michael Kim were at all relevant time the directors of TTAC who were responsible for the contents of the S-4 and signed the registration statement for the issuance of New TOC common stock which was exchanged for Legacy Terran stock held by Plaintiff and class members. These Defendants are hereafter sometimes referred to as the "TTAC Directors" and are named herein as aiders and abettors of the Legacy TOC directors' of fiduciary breaches and for their own '33 Act violations.

37.     Defendant Continental was founded in 2000. Continental's line of business includes providing services to security or commodity holders, brokers, or dealers. Continental is a New York limited purpose trust company located at One State Street, Floor 30, New York Ny 10004.[1]

38.     Continental served as transfer agent for Terran Orbital and Tailwind in their merger transaction.  According to its website, Continental has handled more than 60% of all US

---

[1] *See* https://sec.report/CIK/0000024179.

IPOs brought to market in the past three years.[2]  It also claims to have special expertise in handling SPAC transactions, boasting that it is "THE INDUSTRY LEADING SPAC ADMINISTRATOR" due to its 30 years' worth of experience in handling SPAC IPOs.[3] Continental dedicates an entire page of its website to its "SPAC SENIOR MANAGEMENT TEAM."[4]

### III.   JURISDICTION, VENUE, AND GOVERNING LAW

39.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000.00 and there is diversity between a Plaintiff and a Defendant and federal question jurisdiction by virtue of the claims asserted herein arising under Sections 11 and 12 of the Securities of 1933 ("'33 Act").

40.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avails themselves of the markets in this District, through the promotion, sale, and marketing of their services in this District.  Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

---

[2] *See* https://continentalstock.com/why continental/about-continental/ (last visited November 21, 2022.

[3] *See* https://continentalstock.corn/products-services/spac/.

[4] *See* https://continentalstock.corn/products-services/spac/spac-tearn/.

### IV.   FACTUAL BACKGROUND

**A.   Introduction**

41.   Legacy TOC was founded in 2013 by defendant Bell in Irvine, California.
Legacy TOC is a contract manufacturer, designing, building and engineering satellites primarily
for the U.S. government. Around 95% of Legacy's TOC work was related to NASA and the
Department of Defense. Legacy TOC has since moved from Irvine, California to its current
headquarters in Boca Raton, Florida located at 6800 Broken Sound Pkwy NW, Boca Raton, FL
33487.

42.   Most class members joined Legacy TOC when it was a struggling startup in a
cutthroat industry, working for relatively low wages considering their specialized pedigrees and
technical roles as engineers and other esoteric highly skilled positions with responsibilities in
areas like Guidance, Navigation and Controls Engineering that would ultimately lead to Terran's
success. Each took significant risks by joining an aerospace startup and by agreeing to accept
stock options as a significant part of his or her compensation, in the hopes that Terran Orbital
would prove the industry outlier and succeed where many others have failed.

43.   Over time, each class member exercised his or her options to purchase shares of
Legacy TOC common stock. Each hoped, of course, that if Legacy TOC were to someday go
public or pursue some other, similar strategic transaction, they would be able to sell their shares
in the open market at their discretion.

44.   In going public via SPAC, which has been disastrous for most investors, Legacy
TOC joined a heavily competitive and saturated trend of space companies like Virgin Galactic,
Astra, Rocket Lab, Planet and more.  But Terran CEO Bell was adamant to claim Terran was
immune from their competition:

> We look at a lot of these space SPACs that have gone out and a lot of them weren't businesses that should have gone public. We on the other hand, have real revenues, real pipeline, real backlog, real customers.

*See* https://terranorbital.com/terran-orbital-starts-trading-on-the-nyse-with-200-million-in-outstanding-spacecraft-orders/ (last visited November 22, 2022).

45. Terran Orbital has never been profitable, and as of November 12, 2022, had the latest financial year loss of $139 million and a trailing-twelve-month loss of $156 million, with a $459 million market-cap.[5]

### B.   The SPAC Market Emerges

46. At the same time that Legacy TOC was in need for capital, U.S. capital markets saw the explosive rise of the "special purpose acquisition company," or SPAC, as a viable alternative to the traditional IPO process.

47. The typical SPAC holds one asset (cash) and has one purpose (to merge). SPACs had been around for decades and had long been used as alternative investment vehicles or as shell entities created to facilitate corporate transactions. Starting in the mid-2010s, they began to compete with private equity firms and strategic buyers as significant players in the M&A marketplace via deals structured like reverse mergers.

48. SPAC transactions are designed to allow a target company to go public without going through the formal IPO process or being subject to the rules and regulations such a process would entail. They all tend to work the same way. First, a sponsor will form a SPAC as a private company and sell shares in it to investors with the promise of using the proceeds of those sales to buy another company. It may limit its search to companies in a specific sector (say, digital media or food services) or to companies with certain characteristics (*e.g.*, "disruptive" startups looking

---

[5] *See* https://simplywall.st/stocks/us/capital-goods/nyse-llap/terran-orbital/news/breakeven-on-the-horizon-for-terran-orbital-corporation-nyse (last visited November 22, 2022).

to revolutionize an existing market). Then, once the SPAC has raised sufficient capital, it will go public via an IPO and get listed on a national exchange.

49.     At this point, the SPAC will identify a target private company looking to go public.  It will then conduct its diligence and begin the process of acquiring the private company. Upon closing, the target will merge into the SPAC, and the SPAC will take on the target's corporate name and business. In other words, the target private company will become a public one without having to follow the usual IPO and exchange-imposed rules.

50.     In a SPAC transaction, the target company's stockholders' share are exchanged for freely tradeable stock pursuant to the terms of the merger agreement.

51.     The SPAC market took off in 2020, with the number of SPAC transactions closed that year more than quadrupling the number closed in 2019.  This trend to go public via SPAC proved disastrous for most investors with shares down 45% for companies that went public through SPACs in the past two years as of June 8, 2022.[6]

52.     Despite huge losses for investors, or in this case, employee stockholders who were issued New TOC stock form a defective S-4 and were denied their right to sell their shares until it was too late, SPAC managers and founders off "often score big wins even as stock market investors get stung by instantly plummeting valuations after those companies go public."[7]

### C.     Legacy TOC Enters Into A SPAC Transaction

53.     Defendant Tailwind Two Acquisition Corp. filed its Form S-4, Amendment No. 3 on February 10, 2022 which was declared effective on February 14, 2022. The Proxy Statement

---

[6] *See* https://www.cnn.com/2022/06/08/investing/spacs-canceled-blank-check-stocks/index.html (last visited November 22, 2022).

[7] See https://www.fool.com/investing/2022/10/16/spac-managers-emerge-as-clear-winners-of-the-spac/ (last visited November 22, 2022).

Prospectus used to solicit Plaintiffs' votes was made part of the S-4. The S-4 registered, *inter alia*, 182, 739, 883. Of those, up to 116,584,883 shares were slated for issuance to Plaintiff and other Legacy Terran common stockholders in connection with the Merger at an exchange ratio of 27.704 shares of New Terran per Legacy Term share which could be adjusted.

54.     The S-4 also registered 43,125,000 shares New Terran shares which were converted by operation of law from 34,500,000 Class A shares issued in Tailwind Two's IPO and 8,625,000 Class B shares ordinary held by Tailwind Two's "initial shareholders," Defendants Tommy Stadlen and Defendant TTS,

55.     The S-4 also registered 19,300,000 New Terran shares issuable upon exercise of warrants and the registration of 19,300,00 warrants to purchase New Terran stock to be issued upon the exercise of 11,500,000 public warrants and 7,800,000 private placement warrants issued in connection with TTAC's public offering in 2021.

56.     On or about October 28, 2021, Legacy TOC announced that it had reached a deal to go public via SPAC by merging with TTAC.

57.     When the merger deal was announced, it was estimated to give New TOC a $1.8 billion equity valuation and was expected to close in the first quarter of 2022.[8]

58.     In connection with the Merger, TTAC entered into a PIPE Agreement pursuant to which PIPE Investors agreed to acquire 5,080,409 shares of New Terran common stock for approximately $50.8 million in connection with the closing.

59.     The Private Placement warrants were purchased for $1.52 per warrant and had an exercise price of $11.50 per TTAC Class shares.

---

[8] *See* https://www.cnbc.com/2021/10/29/terran-orbital-going-public-via-spac-at-1point8-billion-valuation.html (last visited November 11, 2022).

**D.  Legacy TOC And Its Directors Use TTAC's Materially False And Misleading S-R Registration Statement And Proxy Prospectus To Solicit Legacy TOC Shareholders To Vote For The Merger**

60.     The S-4 used to solicit Plaintiff and class members' consent for the merger was declined effective on February 14, 2022.

61.     On or before February 15, 2022, Plaintiff and the class were sent a notice soliciting them to "consent to the Merger Agreement, the other transaction agreements and the Transactions." Their consent was a condition precedent to the Merger which was not waivable.

62.     In the solicitations, Legacy TOC shareholders were directed to "material information regarding the Transaction at the following link [*i.e.* link to SEC filing], which contains the latest filed Registration Statement" (that link led to the S-4) and Legacy TOC shareholders were "requested" to execute and deliver the "Written Consent of the Common and Preferred Stockholders of Terran Orbital Corporation."

63.     The solicitation provided to its shareholder employees stated:

As you may be aware, on October 28, 2021, following approval of its Board of Directors, Terran Orbital Corporation ("TOC") entered into a Merger Agreement (the "Merger Agreement") with Tailwind Two Acquisition Corp. ("TW2"), in which TOC will merge with Titan Merger Sub, Inc., a wholly-owned subsidiary of TW2, with TOC continuing as the surviving corporation (the "Merger"). Pursuant to the terms of the Merger Agreement, TOC has entered into support agreements with certain common and preferred stockholders who have agreed to consent to the Merger and the related transactions contemplated thereby (the "Transactions") within two business days following the effectiveness of the Registration Statement/Proxy Statement (the "Effective Time") filed with the Securities and Exchange Commission in connection with the Transactions (the "Registration Statement"). The Effective Time is anticipated to occur on or about Monday, February 14, 2022. You can find material information regarding the Transaction at the following link, which contains the latest filed Registration Statement: https://www.sec.gov/Archives/edgar/data/1835512/000110465922017362/tm2133616-10.

In order to help ensure that TOC receives the consent of sufficient stockholders for approval of the Merger and the Transactions under Delaware law, we are also seeking your consent to the Merger Agreement, the other transaction agreements

and the Transactions, and request that you please execute and deliver the attached a Written Consent of the Common and Preferred Stockholders of Terran Orbital Corporation voting together as a single class approving the Merger Agreement, the other transaction agreements and the Transactions.

Please sign the attached consent and deliver it to TOC by the close of business on Tuesday, February 15, 2022, but do not date the signature page. If we receive your executed signature page prior to the Effective Time, TOC will hold your signature page in escrow until the Effective Time. Your signature page will be automatically released at such Effective Time and will be dated as of such date and attached to the written consent.

(the "Effective Time" referred to in the solicitation above is not the same as the "Effective Date" referred to herein the latter which denotes the closing date of the Merger and date on which Legacy TOC shares were converted into New TOC shares).

64.     Stockholders were instructed to "not date the signature page" so that Legacy TOC could insert date for the shareholder.

65.     The Legacy Terran directors were obligated to follow Delaware law with respect to the written consents for approval of the Merger.

66.     Under DGCL 228, the Legacy Terran Directors, were required to obtain valid written consents, but the written consents used to approve the Merger were not signed and dated by stockholders and Legacy Terran directors did not allow any revocations of written consents. The Legacy Terran Directors collected undated written consents and illegally used same to secure approval of the Merger. DGCL 228(c)(2016). This was a violation of their fiduciary duties and of Plaintiff's franchise rights.

67.     The merger announcement took many Terran Orbital employees by surprise. It was the first time many of them, including class members, had heard about Terran Orbital's SPAC plans, or that negotiations were that far advanced. Employees and other private

shareholders of Terran Orbital grew eager for the chance to finally be able to sell their New TOC

stock.

68.     When Plaintiff and other class members were solicited to vote for the Merger by

Legacy TOC they were referred to the February 14, 2022 Proxy Prospectus, and a link was

provided. Among other things, the Proxy Prospectus provided the following information to

Plaintiff and the Class about how their Legacy TOC common stock would be converted to New

TOC common stock that would be registered and freely tradeable:

> On the Closing Date, at the Effective Time, Merger Sub will merge
> with and into Terran Orbital (the "Merger"), with Terran Orbital as
> the surviving company in the Merger and, after giving effect to
> such Merger, Terran Orbital shall be a wholly-owned subsidiary of
> Tailwind Two, which will change its name to "Terran Orbital
> Corporation" ("New Terran Orbital") substantially concurrently
> with the Effective Time. In accordance with the terms and subject
> to the conditions of the Business Combination Agreement, at the
> Effective Time, each outstanding share of Terran Orbital will be
> automatically converted into the right to receive a number of
> shares of New Terran Orbital Common Stock (as defined in the
> accompanying proxy statement/prospectus), based on the
> Exchange Ratio (as defined in the accompanying proxy
> statement/prospectus).

69.     In the Proxy Prospectus, which incorporated by reference the Merger Agreement,

Plaintiff and class members were told that the consummation of the Business Combination was

conditioned upon, among other things:

> (i) the approval by our shareholders of the Condition Precedent
> Proposals being obtained; (ii) approval of the Business
> Combination Agreement and the Merger by the Terran Orbital
> stockholders; (iii) the applicable waiting period under the HSR Act
> relating to the Business Combination Agreement having expired or
> been terminated; (iv) Tailwind Two having at least $5,000,001 of
> net tangible assets (as determined in accordance with Rule 3a51-
> 1(g)(1) of the Exchange Act) after giving effect to the transactions
> contemplated by the Business Combination Agreement, the PIPE
> Financing and the Debt Financing; (v) the Net Debt Condition; (vi)
> the approval by NYSE or Nasdaq of our initial listing application

in connection with the Business Combination (also see "Risk Factors — The NYSE or Nasdaq may delist New Terran Orbital's securities from trading on its exchange, which could limit investors' ability to make transactions in its securities and subject New Terran Orbital to additional trading restrictions."); (vii) the effectiveness of the registration statement of which this proxy statement/prospectus forms a part; (viii) the consummation of the Domestication; (ix) the requisite consents have been obtained from Terran Orbital's equity holders and noteholders; (x) either (a) the FP Note Purchase Agreement shall have been executed and the financing pursuant to such agreements shall be available to Terran Orbital on the terms provided in the FP Note Purchase Agreement, or (y) definitive documents shall have been executed by Terran Orbital with respect to alternative financing arrangements mutually acceptable to Terran Orbital and Tailwind Two; and (xi) the absence of a Terran Orbital Material Adverse Effect.

None of the foregoing conditions were ever waived.

70.     The "Effective Time" was defined in the Plan as such date and time when the Certificate of Merger is filed with the Delaware Secretary of State or some other later time agreed by the parties to the Plan, that occurred on March 28, 2022. The fact that the Certificate of Merger was signed and filed signifies that all of the conditions for conversion of Legacy TOC stock to New TOC stock on the Effective Date had been met.

71.     Legacy TOC's board of directors adopted a resolution recommending that the stockholders of TOC approve the adoption of the Merger Agreement.

72.     At the Effective Time, all TOC common stock and Preferred Stock were automatically converted into the right to receive TTAC common stock equal to the Exchange Ratio (as defined in the Merger Agreement) and thereafter all TOC shares would "cease to have any rights" except as otherwise expressly provided in the Plan or under applicable law.

73.     The Merger Agreement required the appointment of Continental Stock Transfer & Trust Company as the Exchange Agent for exchange of Company Shares certificates or book-entry into "Transaction Share Consideration."

74.     The Merger Agreement expressly provides that each Company shareholder was

"entitled to receive their portion of the Transaction Share Consideration" on the Closing Date

defined at Merger Agreement § 3.01, which was prior to the Effective Date and both TTAC and

TOC were obligated under the Merger Agreement "to take all necessary actions to cause the

applicable portion of the Transaction Share Consideration to be issued to the applicable

Company Stockholder in book entry form on the Closing Date" (305 (d)).

75.     Defendants knew that the imminent sale by Legacy TOC employees of their

common stock could depress the market for New TOC common stock once the registered stock

was distributed to Plaintiff and class members. Defendants admitted this knowledge in an S-1

issued days after the Effective Date of the Merger:

> **Future sales, or the perception of future sales, by New Terran
> Orbital or its stockholders in the public market following the
> Business Combination could cause the market price for New
> Terran Orbital Common Stock to decline.**
>
> The sale of shares of New Terran Orbital Common Stock in the
> public market, or the perception that such sales could occur, could
> harm the prevailing market price of shares of New Terran Orbital
> Common Stock. These sales, or the possibility that these sales may
> occur, also might make it more difficult for New Terran Orbital to
> sell equity securities in the future at a time and at a price that it
> deems appropriate.
>
> Upon consummation of the Business Combination, and subject to
> the following assumptions, New Terran Orbital would have a total
> of approximately 165,441,640 shares of New Terran Orbital
> Common Stock outstanding, assuming no redemptions, (i)
> 112,574,014 shares of New Terran Orbital Common Stock are
> issued to the holders of securities of Terran Orbital at Closing,
> which would be the number of shares of New Terran Orbital
> Common Stock issued to these holders if Closing were to occur on
> February 9, 2022; (ii) 4,662,217 shares of New Terran Orbital
> Common Stock are issued to the Debt Providers; (iii) 5,080,409
> shares of New Terran Orbital Common Stock are issued in the
> PIPE Financing; (iv) no Public Warrants, Private Placement
> Warrants or Debt Provider Warrants issued in connection with the

Business Combination to purchase New Terran Orbital Common Stock that will be outstanding immediately following Closing have been exercised; (v) no options to purchase New Terran Orbital Common Stock outstanding as of February 9, 2022 have been exercised; and (vi) no restricted stock and restricted stock unit awards that will be outstanding immediately following Closing have been converted into common stock. All shares issued in the Merger will be freely tradable without registration under the Securities Act and without restriction by persons other than New Terran Orbital's "affiliates" (as defined under Rule 144 of the Securities Act, "Rule 144"), including New Terran Orbital's directors, executive officers and other affiliates.

76.     Plaintiff and class members were not informed of all material facts regarding the exchange of Legacy TOC stock for New TOC stock in the Proxy Prospectus or other solicitations for their vote.

77.     The S-4 Proxy Prospectus was materially false and misleading because Plaintiff and the class were informed that:

(a)     The S-4 represented that after the merger even considering "maximum redemption," of TTAC shares the "cash to balance sheet" of New TOC would be $179.1 million; instead as revealed by New TOC's Form 10-Q filing after the merger, as of March 31, 2022 (only five business days after the merger) New TOC's "cash and cash equivalents" was only $76,654,000;

(b)     The S-4 failed to disclose the effects on New TOC's financial condition of the fact that of the $50.8 PIPE Financing prominently disclosed in S-4, $30 million of that financing was to be returned to PIPI investors over 16 quarters at the rate of $1.875 million per quarter even though the PIPE investors to whom the $30 million would be returned would still receive their new TOC shares and such dilution was not fully disclosed in the Proxy Prospectus received by Plaintiffs and the Class;

(c)     It was not disclosed to Plaintiff and class members that on March 25, 2022, the Parties to the merger amended the merger agreement to delete the condition to consummation of the Transactions contemplated by the Merger Agreement that the "Net Debt" equal $40,000,000 or less and added a condition that the maximum of TTAC redemptions shall not be greater than 85% of the aggregate number of Class A shares of TTAC eligible for redemption being redeemed. The maximum redemption percentage as a condition of the merger was 85% but in fact the parties to the member <u>waived</u> that condition and TTAC stockholders redeemed their TTAC) (receiving $10.28 in cash) shares in a greater percentage than 85% thus increasing the dilution of Legacy TTAC shareholders;

(d)     It was not disclosed to Plaintiff and class members that after the S-4 was issued, the parties to the Merger revised the lock up agreement in the Merger Agreement to release an additional 2,400,000 shares of New TOC issued to Beach Point, an affiliate of Legacy TOC director from the lock-up;

(e)     It was not disclosed to Plaintiff and class members that by the TTAC redemption date, 97.9% of TTAC public shareholders had redeemed their TTAC stock and withdrawn as redemptions for more cash more than the 85% maximum redemption original condition to the merger disclosed in the S-4;

(f)     It was not disclosed to Plaintiff and class members that after the S-4 was effective and specifically on March 25, 2022, Beach Point Capital exchanged the Legacy TOC debt it held for New TOC common stock and as consideration received 2.4 million shares of New TOC common stock; and

(g)     The S-4 Registration statement and accompanying proxy prospectus failed to disclose that on March 25, 2022, the parties to the Investors Rights Agreement amended the

agreement to release 2,400,000 shares of New TOC from the Agreement's original lock up provisions.

78.    As a result of the huge number of redemptions by TTAC shareholders, all TTAC and Legacy Terran's officers and directors knew that after the Merger, New TOC stock would face enormous selling pressure. Legacy TOC and TTAC wanted to avoid adding any additional selling pressure from Plaintiff and class members' immediate sale of their New TOC stock. Accordingly, they conspired and acted or intentionally failed to act to allow Plaintiff and class members to sell their New TOC stock.

79.    The Merger was poorly received by TTAC's SPAC investors who redeemed their shares in such great quantities that the maximum redemption condition previously written into the Merger Agreement as a condition to the closing of the merger and the funding provided by Francisco Partners was waived by the respective parties. None of this was disclosed on a timely basis to Legacy TOC holders.

80.    The TTAC shareholder vote was held on March 22, 2022 and the Merger was approved.

81.    On March 25, 2022 TTAC filed a notice of deregistration in the Cayman Island for TTAC and simultaneously filed a certificate of incorporation and certificate of domestication with the Delaware Secretary of State.

82.    At the time of the Merger signing, TTAC's Class A common stock and its Acquirer Warrants were listed separately on the NYSE as TWNT and TWNT WS respectively and as a "unit" under "TWNT U" and Acquirer warranted that such listing would not be terminated. Thus, Legacy TOC share could have been easily connected to New TOC stock on the Effective Date but Defendants did not allow that to happen.

83.     The consents which TOC asked Plaintiff and other shareholders to sign were required as a term of Merger Agreement. (607(a) and 7.07(a)).

84.     As a result of the Merger, all of Legacy TOC's issued and outstanding common stock was converted into shares of Terran Orbital Corporation's common stock using an exchange ratio of 27.585 shares of New TOC's common stock per each share of Legacy Terran Orbital's common stock. In addition, Legacy Terran Orbital's convertible preferred stock and certain warrants were exercised and converted into shares of Legacy Terran Orbital's common stock immediately prior to the Merger, and in turn, were converted into shares of Terran Orbital Corporation's common stock as a result of the Merger.

85.     Beginning on March 28, 2022, the Company's common stock and public warrants began trading on the New York Stock Exchange (the "NYSE") under the symbols "LLAP" and "LLAP WS," respectively.

86.     After the merger closed, New TOC reported that it received approximately $255.4 million of gross proceeds, purportedly comprised of $80.2 million combined total of gross equity proceeds from Tailwind Two's cash-in trust ($29.4 million) and a private placement ("PIPE") of ordinary shares ($50.8 million). Shareholders were shocked to learn that instead of New TOC realizing $293.3 million in redemptions under a "maximum redemption scenario" as reported in the S-4 (and never revised), New TOC realized redemptions of $316.7 million of the closing of the merger.

## THE PLAINTIFF'S HOLDINGS

87.     During his employment tenure, Plaintiff was granted options to purchase shares of Legacy TOC common stock subject to vesting and exercise provisions applicable thereto.

88.     Plaintiff exercised all options into Legacy TOC common stock in advance of the Merger.

89.     Plaintiff was at all relevant times the holder of the following stock certificate representing shares of common stock of Legacy TOC at the time of issuance.

| Certificate No. | # Of Shares | Date Signed |
|---|---|---|
| C-1001-A | 2000 | 10/13/17 |
| C-1003-A | 833 | 11/30/17 |
| C-1006-A | 417 | 04/04/18 |
| C-1007-A | 250 | 06/20/18 |

90.     Plaintiff's Legacy TOC stock was exchanged for New TOC common stock at a conversion of 27.578 New TOC per Legacy TOC common share which was issued pursuant to a materially false and misleading S-4.

91.     Plaintiff's Legacy TOC share certificates included the same terms and provision on the face and reverse as shown in Exhibit A annexed hereto and did not contain any restrictions other than as applicable to registration requirements for sale.

92.     In total, Plaintiff owned 96,547 shares of New Terran common stock as of the Effective Date.

93.     According to the terms of the Proxy Prospectus used to solicit Plaintiff's and class members' vote in favor of the merger which incorporated the Merger Agreement Terms, Legacy TOC shares should have been available to Plaintiff and class members on the Effective Date.

94.     Plaintiff's shares were not available for trading until April 6, 2022 by which time the share value of TOC had dropped to $643,968 in the aggregate, causing loss and damage of approximately $581,213.

## CLASS ACTION ALLEGATIONS

95.     Plaintiff, a former employee and former stockholder in the Company, bring this ; Rule action individuals and as a class action pursuant to Rule 23 of the Fed. R. Civ. P. on behalf of themselves and (a) all record and beneficial holders of Old Terran common stock who received their New Terran common stock through consummation of the Merger on March 28, 2022 and who were injured by the Defendants' breaches of fiduciary duties and other violations of law (previously defined as the "Class"). Excluded from the Class are all directors of Legacy TOC, New TOC, TTAC, TTAC's sponsor all directors and officer of TTAC and all persons who entered int the "Old Terran Orbital Holder Support Agreement" and the "Investor Rights Agreement" both as defined in the S-4 and Fuel Venture.

96.     This action is properly maintainable as a class action.

97.     A class action is superior to other available methods of fair and efficient adjudication of this controversy.

98.     The Class is so numerous that joinder of all members is impracticable.

99.     The number of members of the Class is believed to be in the thousands, and they are likely scattered across the United States. Moreover, damages suffered by individual members of the Class may be small, making it overly expensive and burdensome for individual members of the Class to pursue redress on their own.

100.     There are questions of law and fact which are common to all members of the Class and which predominate over any questions affecting only individuals, including, without limitation:

        a.     whether Defendants other than Continental owed fiduciary duties to Plaintiff and the Class;

b.  whether Defendants other than Continental breached their fiduciary duties to Plaintiff and the Class;

c.  whether Defendants other than Continental issued a materially false and misleading Proxy Prospectus and other solicitations to influence plaintiff's and class members to vote in favor of the Merger;

d.  whether Defendants (other than Continental) are liable under the 33 Act in connection with the issuance of New TOC common stock from a misleading S-4;

e.  whether all Defendants were negligent, reckless and/or negligent with respect to the exchange of Legacy TOC common stock into New TOC common stock for class members;

f.  whether any Defendants aided and abetted any breaches of fiduciary duties by any Defendants owed to Plaintiff and the Class;

g.  the existence and extent of any injury to the Class or Plaintiff caused by any breach of contract, or fiduciary duty and/or violations of securities laws and/or their negligence; and

h.  the proper measure of the Class's damages.

101.    Plaintiff's claims and defenses are typical of the claims and defenses of other members of the Class, and Plaintiff has no interests antagonistic or adverse to the interests of other members of the Class. Plaintiff will fairly and adequately protect the interests of the Class.

102.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

103.    Defendants have acted in a manner that affects Plaintiff and all members of the Class alike, thereby making appropriate relief with respect to the Class as a whole.

104.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants; or adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members or substantially impair or impede their ability to protect their interests.

<u>**COUNT I**</u>

**Violation of Section 11(A) of the Securities Act Against New TOC and the TTAC**
<u>**Defendants Who Signed the Registration Statement**</u>

105.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

106.    Section 11(a) of the Securities Act of 1933 imposes liability on the issuer and signatories of a registration statement when, the registration statement contains an untrue statement of material fact or omits a material fact required to be stated therein or necessary to make the statements therein not misleading.

107.    The Defendants named herein authored and/or issued the Proxy-Prospectus and S-4 Registration Statement which contained materially false and misleading statements.

108.    Each Class Member acquired a New TOC stock pursuant to this Registration Statement.

109.    The Registration Statement and the Prospectus Supplements were identical for both the Series E and Series F Preferred Shares and contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

110.    TTAC/New TOC is the registrant for the stock offered in the Registration Statements.  As issuer of the securities, TTAC/New TOC is strictly liable to Plaintiffs and the Class for the misstatements and omissions.

111.    Individual Defendants named in this Count signed one or more Registration Statement individually or through an attorney-in-fact and, therefore, are liable pursuant to Section 11 of the Securities Act for any material misstatements of fact or failure to disclose facts necessary to make the statements made in the Registration Statement and the Prospectus not materially misleading.

112.    Defendant TTAC/New TOC is strictly liable pursuant to Section 11 of the Securities Act for any material misstatements of fact or failure to disclose facts necessary to make the statements made in the Registration Statement and the Prospectus not materially misleading.

113.    In connection with the issuance of New TOC shares, the Defendants named in this Count used the means and instrumentalities of interstate commerce and the United States mails.

114.    By reasons of the conduct herein alleged, Defendants named in this Count violated, and/or controlled a person who violated, Section 11 of the Securities Act.

115.    By virtue of these violations, Plaintiff and the other members of the Class have sustained damages.

116.    Less than one year has elapsed from March 28, 2022 (the time that Plaintiff could have discovered the facts for each element of the claims) upon which this complaint is based to the time that Plaintiff filed the Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered and the time Plaintiff filed their complaint.

## COUNT II

**Against All Defendants (Except Continental) for
Violations of Section 12(a)(2) of the Securities Act**

117.   Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

118.   This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class against TTAC/New TOC/Legacy TOC.  This Count is not alleging fraud or intentional conduct or recklessness.

119.   Defendants TTAC/New TOC/Legacy TOC are "sellers" for purposes 12(a)(2) of the Securities Act pursuant to 17 C.F.R. §230.159A.

120.   The Defendants named here solicited the sale of TTAC/New TOC/Legacy TOC common stock for their own benefit pursuant to the Prospectus and supplements that were part of the Registration Statements.

121.   Plaintiff and the other members of the Class acquired shares of New TOC common stock pursuant to the Registration Statements.

122.   As alleged above, the Registration Statements and the Prospectuses and Supplements contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

123.   Plaintiff and the other members of the Class acquired New TOC securities pursuant to the Prospectus Supplements, and neither Plaintiff nor the other Class members knew, or in the exercise of reasonable diligence could have known, of the untruths, inaccuracies and omissions contained in the Prospectus and Supplements

124.    By reasons of the conduct herein alleged, Defendant names in this County violated Section 12(a)(2) of the Securities Act.

125.    By virtue of these violations, Plaintiff and the other members of the Class have sustained damages.  Accordingly, Plaintiff and the other members of the Class who acquired New TOC securities pursuant to the Registration Statements of Prospectuses have a right to rescind and receive their consideration paid, and hereby elect to rescind and tender their New TOC securities to New TOC.  Members of the Class who have sold their New TOC securities are entitled to compensatory damages.

126.    Less than one year has elapsed from the time that Plaintiff discovered the facts upon which this complaint is based to the time that Plaintiff filed the Complaint.  Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT III

### Negligence
### (As Against All Defendants Except Continental)

127.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

128.    Each Class Member owned shares in Terran prior to its go-public transaction with Tailwind Two.

129.    The duty of care imposed upon Defendants required then to convert Legacy TOC shares into freely tradeable New TOC shares and deliver same to Legacy TOC shareholders using at least the level of care that a reasonable person would use under the circumstances.

130.    Defendants breached this duty of care by: (i) neglecting to inform Class Members of the steps, conditions and procedures required to be able to trade their equity; (ii) incorrectly

advising former employee stockholders that their Terran Orbital shares were in lockup and shares would be in a transfer agent yet to be determined; (iii) not directing Continental to make all necessary disclosures well in advance of the first trading day; and (iv) drafting the Merger Agreement to exchange Legacy TOC stock for a "right to receive" New TOC stock instead of automatically converting Legacy TOC stock into New TOC stock on the Effective Date.

131.    As a result, Class Members were unable to trade in Terran shares once they began trading, and their equity lost 50% of its value in the first few trading weeks. Had they been given an appropriate warning in advance of the transaction's close, each Class Members would have been able to mitigate their losses by trading before the value of Terran shares tanked on the open market.

132.    As a direct and proximate result of this breach, Class Members were unable to trade in Terran shares once they began trading, and their equity lost over 50% of its value in the first few trading weeks.

133.    Class Members have been damaged by Terran Defendants' negligence in an amount to be determined at trial.

## COUNT IV

### Negligence
### (Against Continental)

134.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

135.    Continental was the designated transfer agent for Terran in connection with the SPAC transaction until such a time as they transferred those shares to other custodians.

136.    Here, as the transfer agent and temporary custodian (with the power— rightful or not—to transfer the shares upon request of the shareholder) was in the same position as a bailee.

In taking over Terran's records, and then becoming transfer agent in connection with SPAC merger, Continental entered a bailment relationship with all class members that held stock that had yet to be transferred to a brokerage account.

137.    Under Delaware law, a bailment arises when one party delivers  property to another for some purpose after which the property will be returned to  the original party. Upon conversion, Continental took possession of the class members shares until such a time as it was instructed to transfer them elsewhere.

138.    Under Delaware law, it is the duty of the bailee to exercise reasonable care with respect to the property under the terms of the bailment. The required degree of care is such as is reasonably necessary to prevent loss or damage to the property.

139.    As an experienced transfer agent in business for more than 50 years, Continental was fully aware of the common law duty of care it owed to the company's shareholders. By failing to transfer the shares to class members such that they would be sold immediately upon going public, failing to fully inform Plaintiff and class members how to sell or receive their shares such that they could be sold, on information and belief, never encouraging the Terran Executive Officers or Terran  to make such a disclosure themselves, they violated this duty of care.

140.    As a result, Plaintiff and class members were unable to trade in Terran shares once they began trading, and their equity lost 50% of its value in the first few trading weeks. Had they been given an appropriate warning in advance of the transaction's close, each Class Member would have been able to mitigate their losses by trading before the value of Terran shares tanked on the open market.

141.     Plaintiff and class members have been damaged by Continental's negligence in an amount to be determined at trial.

142.     As a result, Class Members were unable to trade in Terran shares once they began trading, and their equity lost 50% of its value in the first few trading weeks. Had they been given an appropriate warning in advance of the transaction's close, each class member would have been able to mitigate their losses by trading before the value of Terran shares tanked on the open market.

## COUNT V

**Against Breach of Fiduciary Duty of
Candor All Legacy TOC and the Legacy TOC Defendants**

143.     Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

144.     Terran and Terran executives, each of Bell, Hobart, Eby and Sitter owed fiduciary duties of candor, care and loyalty (including the duty to act in good faith) to each Terran shareholder.

145.     Likewise, the Defendants named in this Court owed the Company's shareholders a duty of disclosure in soliciting stockholder action to consent to the Merger. This obliged them to refrain from making false or misleading disclosures when communicating with shareholders as described herein.

146.     Terran had an obligation not to mislead its shareholders in its communications with them. This duty was particularly resonant in cases, like the SPAC transaction, in which the company had access to far greater and more detailed information about the merger than its investors had at any given time.

147.    Terran  breached this obligation by: (i) affirmatively, and incorrectly, telling a class member on February 28, 2022 that their shares were in lockup, restricted and in the sole custody of a transfer agent to be transferred at the agent's discretion and (ii) neglecting to inform Class Members prior to March 28, 2022 that they were required to provide the transfer agent with additional information before they would have access to their shares such that they could be sold.

148.    This breach is compounded by the fact that, on information and belief, Terran "affiliates" like Fuel Venture were, unlike Plaintiff and the class, in fact, given the opportunity to sell their shares immediately upon going public for a substantial profit, which opportunity was denied to Plaintiff and the class.

149.    Had class members been given the necessary information to sell their stock, they would have been able to submit the necessary paperwork and have it processed quickly enough to have access to tradable public securities before going public.  As such, the Company's prior disclosures, which should have been overseen by the Terran Defendants, were both incomplete and materially misleading.

150.    In other words, the Terran Defendants impaired the value of class members equity with no justification. By these failures, the Terran Defendants acted in bad faith and in violation of their fiduciary duties of loyalty and disclosure.

151.    As a result, Plaintiff and the class were unable to trade in Terran shares once they began trading, and their equity lost 50% of its value in the first few trading weeks.  Had they been given an appropriate warning in advance of the transaction's close, each class member would have been able to mitigate their losses by trading before the value of Terran shares tanked on the open market.

## COUNT VI

**Aiding and Abetting a Breach of Fiduciary Duty**
**(Against TTAC, TTS and the TTAC Officers and Directors)**

152.     Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

153.     As set forth above, the Legacy Terran Defendants breached their fiduciary duties to the employee shareholders.

154.     As the Defendants named herein were aware of, the Terran Board's fiduciary obligations to Plaintiff and the class by the Defendants named herein knowingly participated in the Legacy Terran Defendants breach of those fiduciary obligations.

155.     As a result, class members were unable to trade in Terran shares once they began trading, and their equity lost 50% of its value in the first few trading weeks.  Had they been given an appropriate warning in advance of the transaction's close, each class member would have been able to mitigate their losses by trading before the value of Terran shares tanked on the open market.

WHEREFORE, Plaintiff respectfully request that the Court enter judgment:

A.   With respect to all Defendants, awarding damages in an amount to be proven at trial, but not less than the difference between the value of the class members shares of Terran Common Stock when it first went public and the value of the Common Stock as of the date they had access to sell;

B.   With respect to Continental, alternatively awarding damages;

C.   Awarding damages in an amount to be proven at trial, but not less than the difference between the value of the class members shares of Terran Common

Stock when it first went public and the value of the Common Stock as of the date they had access to sell;

D.  Awarding statutory prejudgment interest;

E.  Awarding costs and reasonable attorney's fees as permitted under Delaware law;

F.  Ordering any other and further relief that the Court deems just and

G.  Appropriate.

Dated: February 17, 2023

*Respectfully submitted,*

**SQUITIERI & FEARON, LLP**

*/s/ Lee Squitieri*
305 Broadway, 7th Floor
New York, New York 10007
(212) 421-6492
lee@sfclasslaw.com

**MOORE KUEHN, PLLC**
Fletcher Moore
Justin Kuehn
30 Wall Street, 8th Floor
New York, New York 10005
(212) 709-8245
fmoore@moorekuehn.com
jkuehn@moorekuehn.com

*Attorneys for Plaintiff Jeffrey Mullen*