**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY MULLEN, ROBERT IRWIN, JUSTIN CARNAHAN and THOMAS BENNETT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TERRAN ORBITAL OPERATING CORPORATION f/k/a TERRAN ORBITAL CORPORATION, MARC BELL, JAMES LaCHANCE, STRATTON SCLAVOS, MATTHEW EBY, DANIEL STATON, PHILIP KRIM, CHRIS HOLLOD, WISDOM LU, BORIS REVSIN, TOMMY STADLEN, MICHAEL KIM, TERRAN ORBITAL CORPORATION f/k/a TAILWIND TWO ACQUISITION CORP. and TAILWIND TWO SPONSOR LLC,<br><br>Defendants. | Case No.: 1:23-cv-01394-JMF<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jeffrey Mullen, Robert Irwin, Justin Carahan and Thomas Bennett ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel, allege the following for their amended complaint against Defendants Terran Orbital Operating Corporation f/k/a Terran Orbital Corporation ("Old Terran"), Marc Bell, Daniel Staton, James LaChance, Stratton Sclavos (the "Old Terran D&O Defendants"), Terran Orbital Corporation f/k/a Tailwind Two Acquisition Corp. (referred to herein as "TTAC" or "New Terran"), Matthew Eby, Philip Krim, Tommy Stadlen, Wisdom Lu, Boris Revsin, Chris Hollod, Michael Kim, (are referred to as the "TTAC D&O Defendants"), Tailwind Two Sponsor LLC ("TTS" or the Sponsor).

## I. NATURE OF THE ACTION AND OVERVIEW

1. Plaintiffs bring this class action on behalf of themselves and all other similar situated persons in the United States who were owners of common shares in pre-merger Terran Orbital Corporation ("Old Terran") who received New Terran common shares issued from a materially false and misleading S-4 Registration Statement and Prospectus effective February 14, 2022. Plaintiffs and the Class were induced to forego appraisal and provide written consents in favor of the Merger Agreement and Merger via materially false and misleading Consent Solicitations which included, by reference, the Tailwind Two Acquisition Corp.'s February 14, 2022 S-4 Registration Statement including the Prospectus. The Consent Solicitation and S-4 contained materially false and misleading statements concerning material terms of the Merger such as (i) dilution of the Old Terran stockholders; (ii) the amount of value dilution which would be suffered by Plaintiffs and the Class; (iii) the process for obtaining tradeable New Terran stock in the Merger; (iv) appraisal rights; (v) the ability of Old Terran shareholders to sell their new Terran shares on the closing date of the Merger; and (vi) changes in terms of the Merger Agreement and effect on Plaintiffs and the class.

2. The Merger was a "deSPAC' transaction, a transaction wherein a special purpose acquisitions company ("SPAC"), here Defendant TTAC, acquires a non-public operating business (here Old Terran) and brings it public through a merger of the non-public operating company and the public SPAC.

3. In 2021, Legacy TOC and the SPAC Defendant TTAC agreed to merge and The Merger was affected on March 25, 2022. The Merger terms dictated, *inter alia*, that Old Terran common stock would be exchanged for New Terran common stock at an agreed exchange rate which would be set based upon an agreed value of Old Terran.

4. The New Terran common stock shares which were the consideration for the Old Terran shares exchanged in the Merger were registered and issued on March 28, 2022. New Terran shares started trading on the New York Stock Exchange under ticker symbol “LLAP” on March 28, 2022.

5. Plaintiffs and class members did not receive the New Terran shares as provided in the terms of the Merger Agreement nor as represented in the Consent Solicitations nor as required by Delaware law.

6. Plaintiffs and individual Class member are former Old Terran employees who were granted, and subsequently exercised, employee stock options and converted same into Old Terran common stock well in advance of the Consent Solicitation. All Plaintiffs and class members had their consents solicited through the same informational materials sent to them by Old Terran. All of Plaintiffs and class members were solicited to sign written consents in favor of the Merger before knowing the final terms of the Merger Agreement.

7. All Defendants were responsible for execution of the exchange of Old Terran common stock for freely tradeable New Terran common stock which was to have occurred to allow Plaintiffs and class members to have possession and control of freely tradeable on the closing or the latest Effective Date of the Merger, March 25, 2022 or latest March 28, 2022 and be able to sell same on the first trading day of New Terran stock.

8. While the transfer of New Terran common stock to Plaintiffs was represented by Old Terran and Old Terran D&O Defendants would take place “once the deal closes,” on March 25, 2022 (the “Effective Date” as defined in the Merger Agreement), it took several more days (and for some class members weeks) to get New Terran stock in their accounts. Until that time,

Plaintiffs and other class members were unable to sell their stock and the New Terran share price fell precipitously before any Plaintiffs or class members could sell the stock.

9. Old Terran, though a representative, confirmed the terms of the obligation to exchange Old Terran stock for New Terran stock found in the S-4 by assuring Plaintiffs and class members "once the deal closes, the accounts will hold the public company share for each Terran shareholder." Old Terran's representative confirmed and understood that the Merger Agreement's provisions for exchange of Old Terran for New Terran freely tradeable was intended to and would result in Plaintiffs and class members receiving their freely tradeable New Terran shares "when the deal close,"(*i.e.*, the Effective Date).

10. Neither Plaintiffs nor any class members were subject to any restrictions relevant to class members' Old Terran common stock (other than registration) in the exchange of Old Terran stock for freely tradeable New Terran common stock on the date of the closing of the Merger.

11. According to the terms of the applicable instruments, Plaintiffs and the class members were to receive freely tradeable New Terran stock on the Effective Date without any further action that needed to be taken by the New Terran shareholder. In this regard, the S-4 misrepresented the process for Plaintiffs and class members to be able to sell their stock.

12. On March 29, 2022, after the Merger closing, Old Terran representative Hilary Hageman admitted in a communication to Plaintiffs and class members that the process for Plaintiffs and class members to get their freely tradeable New TOC stock was materially different than what had been disclosed to them in February 28, 2022 communications from Old Terran and in the S-4 and consent solicitations used by Old Terran to solicit consents for the Merger from Plaintiffs and class members:

> I have confirmed you are not subject to a lockup. As a former employee who is now a non-insider investor of Terran Orbital Corporation, you are also not subject to any insider trading restrictions due to trading blackouts. Terran is using Continental Stock Transfer & Trust Company (post-closing stock transfer agent) to facilitate the transfer of all shareholder/investor pre-IPO shares to publicly tradable shares. My understanding is that Continental will be sending you correspondence (via email) in the next few days with all the information you'll need to access your post-closing publicly tradable shares (and see their value) on-line. At that time, you will be able to transfer those shares into your own personal brokerage account if you choose. From that point on, the Terran shares will be like all other public company shares you own.

Hilary Hageman's email revealed for the first time that Legacy TOC shareholders would not be given their freely tradeable New TOC common stock on the Effective Date as described in the S-4 and Consent Solicitation.

13. On April 1, 2022, (four days after the start of trading of New Terran stock on March 28, 2022 on the NYSE), class members received, for the first time, an email from clientcomm@continentalstock.com (the stock transfer company) regarding the steps they were to follow before the New TOC stock could be transferred into their accounts and sold.

14. Nothing in the S-4 or Consent Solicitation or other materials from Old Terran or TTAC disclosed the protracted process that Plaintiffs and class members would need to endure to get their freely tradeable New Terran stock which was promised to them in the Merger. Nor was there any disclosure or warning of any risk that Plaintiffs and class members would not get their freely tradeable New Terran common stock on the Effective Date.

15. By the time class members had access and control over their New Terran shares to sell, the price of New Terran common stock had fallen precipitously in the market due to selling by TTAC stockholders whose New Terran stock was available to them to sell on the Effective Date, March 28, 2022.

16. In addition, Plaintiffs and class members suffered loss and damages because the New Terran stock given to Plaintiffs and the Class in exchange for their Old Terran stock was issued from a materially false and misleading S-4.

17. The Consent6 Solicitations and S-4 contained the materially false and misleading statements which misrepresented, *inter alia*,: (i) the process for, and timing of, Plaintiffs and class members' receipt of New Terran shares; (ii) the adverse financial consequences to Old Terran shareholders of the consequences of Defendants multiple modifications to the Merger Agreement after February 14, 2022, (iii) the merger cash proceeds to be realized from the merger, (iv) the dilution to be suffered by Old Terran shareholders, (v) the fact that TTAC holders receiving New Terran shares could sell them on March 28, 2022 while Old Terran shareholders could not sell their shares until later in April 2022, and (vi) the existence of appraisal rights.

18. Old Terran and the Old Terran D&O Defendants breached various fiduciary duties of loyalty and care and candor owed to Plaintiffs and the class directly by providing materially false and misleading Consent Solicitation.

19. Beginning on March 28, 2022 New Terran's common stock began trading on the New York Stock Exchange under the symbol ("LLAP"). But Plaintiffs and class members were not provided with their stock until April 5, 2022.

20. At the end of the first week after the March 28, 2022 merger closing and New TOC began trading over 26.7% (closing price of $7.33) of value had been wiped from New TOC shares. At the end of the second week, the price of New TOC had been pushed to the mid $4/share. It is estimated that over $15-20+ million was lost by class members who collectively

held over 1.2 million shares of New Terran common stock who could not sell their stock until after April 5, 2022.

21. As a result of the foregoing violations of fiduciary duties, the DGCL, the Securities Act of 1933 ("33 Act") and acts of misfeasance and malfeasance, class members suffered loss and damage. Plaintiffs and class members did not receive their New Terran common stock as per representations made when their vote was solicited and thereby lost their opportunity to seek appraisal which would have resulted in an appraisal award of a minimum of $7 per share but most likely at least the $10 merger consideration price and/or sell their New Terran shares for the prevailing market price on the Effective Date.

22. While class members lost millions, the TTAC stockholders, like Fuel Venture Capital ("FVC"), were able to sell their New Terran shares on the first day of trading of LLAP for a substantial profit. Indeed, as evidenced by the screenshot below, TOC and Fuel Venture Capital ("FVC" or "Fuel") celebrated FVC's ability to immediately liquidate their entire New Terran position as soon as New Terran shares traded on the NYSE.

9:06

**Maggie Vo, CFA** · 2nd
Managing General Partner and Chief Investment Officer at Fuel Venture Capital
5d ·

After two years of work since our initial investment, Fuel Venture Capital successfully exited Terran Orbital Corporation. Since the first day of due diligence, we have believed that Terran Orbital will be one of the leading satellite manufacturers and operators and will become the largest commercial synthetic aperture radar (SAR) constellation in the world. 🍾🎉🎊
Congratulations to Marc Bell and the entire Terran Orbital team on going public on the NYSE. Such an honor to be part of this critical moment in history and to ring the opening bell. I am beyond proud of all of the hard work both Terran Orbital and Fuel have put in to make this happen. For now, Live Long And Prosper (NYSE: LLAP)

#NYSE #Listed #LLAP #Space #Fueled




Leave your thoughts here... @ Post

Home My Network Post Notifications 20+ Jobs

23. In a March 29, 2022 posting, Terran Orbital itself confirmed Fuel's excitement to dump its stock as soon as the company went public:




*See* https://terranorbital.com/terran-orbital-a-leader-in-small-satellites-goes-public-on-nyse-early-investor-fuel-vc-celebrates-an-exit/#:~:text=22-,Terran%20Orbital%2C%20a%20leader%20in%20small%20satellites%2C%20goes%20public%20on,IPO%20valuation%20of%20%241.8%20billion (last visited November 22, 2022)

## II. PARTIES

24. Plaintiffs are former employees of Old Terran who held shares of Old Terran's common stock which by terms of the Merger Agreement was to have been converted on the Effective Date into freely tradeable New Terran common stock and available for Plaintiffs to sell.

25. Plaintiff Robert Irwin ("Irwin") was at all relevant times before February 14, 2022 the holder of Certificate Nos. ES-0045 and ES-0046 representing 2,687 shares of Old Terran which were converted into New Terran shares at a rate of 27.585 new shares for each old share. Thus, Irwin was entitled to have issued to him 71,400 New Terran shares on the effective date valued at $714,200.00.

26. Plaintiff Jeffrey Mullen was at all relevant times the holder of the following stock certificate representing shares of common stock of Legacy TOC at the time of issuance.

| Certificate No. | # Of Shares | Date Signed |
|---|---|---|
| C-1001-A | 2000 | 10/13/17 |
| C-1003-A | 833 | 11/30/17 |
| C-1006-A | 417 | 04/04/18 |
| C-1007-A | 250 | 06/20/18 |

These were converted to 96,547 shares of New Terran.

27. Plaintiff Justin Carnahan ("Carnahan") was at all relevant times before February 14, 2022 the holder of Certificate Nos. C-32 and C-206A representing 5,000 shares of Legacy Orbital which were converted into new Terran shares at a rate of 27.585 new shares for each old share. Thus Carnahan was entitled to have issued to him 137,925 New Terran shares on the effective date valued at $1,379,250.00.

28. Plaintiff Thomas Bennett ("Bennett") was at all relevant times before February 14, 2022 the holder of Certificate No. C-1045 representing 1,250 shares of Legacy Orbital which were converted into new Terran shares at a rate of 27.585 new shares for each old share. Thus Bennett was entitled to have issued to him 43,475 New Terran shares on the effective date valued at $344,810.00.

29. Defendant Terran Orbital Corporation formerly known as Tailwind Two Acquisition Corp. ("TTAC" or "New Terran") is now a Delaware corporation with its principal place of business at 6800 Broken Sound Pkwy NW Suite 200, Boca Raton, FL 33487. It is the public company traded on the NYSE under ticker symbol "LLAP that emerged from the Merger.

30. Defendant Terran Orbital Operating Corporation formerly known as Terran Orbital Corporation ("Old Terran") was formed by the merger of Defendant Tailwind Two

Acquisitions Corp., ("TTAC") and Terran Orbital Corporation. Old Terran is now wholly owned by New Terran as a result of the Merger.

31. Defendant Marc Bell ("Bell") is the Chairman and CEO of New Terran and was a co-founder, director and executive officer of Old Terran.

32. Defendant James LaChance ("LaChance") was a member of Legacy TOC's board of directors through March 25, 2022 when he became a director of New Terran.

33. Defendant Stratton Sclavos ("Sclavos") was a member of Legacy TOC's board from January 2016 through March 25, 2022 when he became a director of New Terran.

34. Defendant Daniel Staton ("Staton") was a director of Legacy TOC from July 2014 through March 25, 2022 when he became a director of New Terran. He is the founder, Chairman and has been Managing Director of Staton Capital LLC since 2003.

35. Defendants Bell, Sclavos, LaChance and Staton were the directors of Legacy TOC and are hereinafter sometimes referred to as the "Legacy TOC Director Defendants."

36. Defendant Tailwind Two Sponsor, LLC ("TTS") is a Delaware limited liability company which was the sponsor and controlling shareholder of TTAC which is/was controlled by Defendant Krim.

37. On or about December 31, 2021, TTAS owned approximately 32.15% of the issued and issuable TTAC Class A ordinary shares. TTAS paid $25,000 for 8,625,000 Class B TTAC shares. TTAS' Class B shares automatically converted into New Legacy shares on March 25, 2022 upon the closing that day of the Merger.

38. Defendants Philip Krim, Matthew Eby (CEO), Chris Hollod, Wisdom Lu, Tommy Stadlen, Boris Revsin and Michael Kim were at all relevant time the directors of TTAC who were responsible for the contents of the S-4 used to solicit consents from Plaintiffs and class

members and who signed the registration statement for the issuance of New TOC common stock which was exchanged for Old Terran stock held by Plaintiffs and class members. These Defendants are hereafter sometimes referred to as the "TTAC Directors" and are named herein for their own '33 Act violations and as aiders and abettors of the Old TOC directors' and officiers' fiduciary breaches enumerated herein.

## III. JURISDICTION, VENUE, AND GOVERNING LAW

39. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000.00 and there is diversity between at least one Plaintiff and at least one Defendant. This court also has federal question jurisdiction by virtue of the claims asserted herein arising under Sections 11 and 12 of the Securities of 1933 ("'33 Act") and pendant jurisdiction for the Delaware statutory and common law claims asserted herein.

40. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avails themselves of the markets in this District, through the promotion, sale, and marketing of their services in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## IV. FACTUAL BACKGROUND

### A. Introduction

41. Old Terran was founded in 2013 by defendant Bell in Irvine, California. Old Terran is a contract manufacturer, designing, building and engineering satellites primarily for the U.S. government. Around 95% of Old Terran's work was related to NASA and the Department

of Defense. Old Terran has since moved from Irvine, California to its current headquarters in Boca Raton, Florida located at 6800 Broken Sound Pkwy NW, Boca Raton, FL 33487.

42. Plaintiffs and most class members joined Old Terran when it was a struggling startup in a cutthroat industry, working for relatively low wages considering their specialized pedigrees and technical roles as engineers and other esoteric highly skilled positions with responsibilities in areas like Guidance, Navigation and Controls Engineering. Each took significant risks by joining an aerospace startup and by agreeing to accept stock options as a significant part of his or her compensation, in the hopes that Old Terran would prove the industry outlier and succeed where many others have failed.

43. Over time, each class member exercised his or her options to purchase shares of Old Terran common stock, which was non-publicly traded, non-registered shares. Each hoped, of course, that if Old Terran were to someday go public or pursue some other, similar strategic transaction, they would be able to sell their shares in the open market at their discretion.

44. In going public via SPAC, which has been disastrous for most investors, Old Terran joined a heavily competitive and saturated trend of space companies like Virgin Galactic, Astra, Rocket Lab, Planet and more. But Old Terran CEO Bell was adamant to claim Old Terran was immune from their competition:

> We look at a lot of these space SPACs that have gone out and a lot of them weren't businesses that should have gone public. We on the other hand, have real revenues, real pipeline, real backlog, real customers.

*See* https://terranorbital.com/terran-orbital-starts-trading-on-the-nyse-with-200-million-in-outstanding-spacecraft-orders/ (last visited November 22, 2022).

45. Old Terran appeared to have vast potential based upon large government contracts and a partnership with Lockheed. The S-4 disclosed that the exchange ratio was based on "an

implied pre-transaction equity value of $1,300,000 plus any increased based on the aggregate exercise prices of Old Terran options and warrants." By November 12, 2022, however, Terran had latest financial year loss of $139 million and a trailing-twelve-month loss of $156 million, with a $459 million market-cap.[1]

**B. The SPAC Market Emerges**

46. At the same time that Old Terran was in need for capital, U.S. capital markets saw the explosive rise of the "special purpose acquisition company," or SPAC, as a viable alternative to the traditional IPO process.

47. The typical SPAC holds one asset (cash) and has one purpose (to merge). SPACs had been around for decades and had long been used as alternative investment vehicles or as shell entities created to facilitate corporate transactions. Starting in the mid-2010s, they began to compete with private equity firms and strategic buyers as significant players in the M&A marketplace via deals structured like reverse mergers.

48. SPAC transactions are designed to allow a target company to go public without going through the formal IPO process or being subject to the rules and regulations such a process would entail. They all tend to work the same way. First, a sponsor will form a SPAC as a private company and sell shares in it to investors with the promise of using the proceeds of those sales to buy another company. It may limit its search to companies in a specific sector (say, digital media or food services) or to companies with certain characteristics (*e.g.*, "disruptive" startups looking to revolutionize an existing market). Then, once the SPAC has raised sufficient capital, it will go public via an IPO and get listed on a national exchange.

[1] *See* https://simplywall.st/stocks/us/capital-goods/nyse-llap/terran-orbital/news/breakeven-on-the-horizon-for-terran-orbital-corporation-nyse (last visited November 22, 2022).

49. At this point, the SPAC will identify a target private company looking to go public. It will then conduct its diligence and begin the process of acquiring the private company. Upon closing, the target will merge into the SPAC, and the SPAC will take on the target's corporate name and business. In other words, the target private company will become a public one without having to follow the usual IPO and exchange-imposed rules.

50. In a SPAC transaction, the target company's stockholders' share are exchanged for freely tradeable stock pursuant to the terms of the merger agreement.

51. The SPAC market took off in 2020, with the number of SPAC transactions closed that year more than quadrupling the number closed in 2019. This trend to go public via SPAC proved disastrous for most investors with shares down 45% for companies that went public through SPACs in the past two years as of June 8, 2022.[2]

52. Despite huge losses for investors, or in this case, Old Terran employee stockholders who were issued New Terran stock from a defective S-4 and then were denied their right to sell their shares until TTAC shareholders depressed the market with their selling, SPAC managers and founders (here TTAS) "often score big wins even as stock market investors get stung by instantly plummeting valuations after those companies go public."[3]

**C. Old Terran Enters Into A SPAC Transaction**

53. On or about October 28, 2021, Old Terran announced that it had reached a deal to go public via SPAC by merging with TTAC.

---

[2] *See* https://www.cnn.com/2022/06/08/investing/spacs-canceled-blank-check-stocks/index.html (last visited November 22, 2022).

[3] See https://www.fool.com/investing/2022/10/16/spac-managers-emerge-as-clear-winners-of-the-spac/ (last visited November 22, 2022).

54. In that IPO, TTAC raised approximately $345,000,000.00 of which approximately $330,000,000.00 was subject to pre-merger redemption which was thus never contributed to New Terran in the Merger.

55. When the merger deal was announced, it was estimated to give New Terran a $1.8 billion equity valuation and was expected to close in the first quarter of 2022.[4] That was later revised downward to $1.3 billion by February 2022.

56. In connection with the Merger, TTAC entered into a PIPE Agreement pursuant to which PIPE Investors agreed to acquire 5,080,409 shares of New Terran common stock for approximately $50.8 million in connection with the closing.

57. Defendant Tailwind Two Acquisition Corp. filed its Form S-4, Amendment No. 3 on February 10, 2022 which was declared effective on February 14, 2022. The Proxy Statement Prospectus used to solicit Plaintiffs'' consents was made part of the S-4. The S-4 registered, *inter alia*, 182, 739, 883. Of those, up to 116,584,883 shares were slated for issuance to Plaintiffs and other Legacy Terran common stockholders in connection with the Merger at an exchange ratio of 27.704 shares of New Terran per Old Terran share which could be adjusted.

### D. Old Terran And Its Directors Use TTAC's Materially False And Misleading S-4 And Consent Solicitations To Get Consents

58. The S-4 used to solicit Plaintiffs and class members' consent for the merger was declared effective on February 14, 2022.

59. On or before February 15, 2022, Plaintiffs and the class were sent a notice soliciting them to "consent to the Merger Agreement, the other transaction agreements and the Transactions." Their consent was a condition precedent to the Merger which was not waivable.

[4] *See* https://www.cnbc.com/2021/10/29/terran-orbital-going-public-via-spac-at-1point8-billion-valuation.html (last visited November 11, 2022).

60. In the Consent Solicitations, Old Terran shareholders were directed to "material information regarding the Transaction at the following link [*i.e.* link to TTAC SEC filing of S-4], which contains the latest filed Registration Statement" (that link led to the February 14, 2022 S-4) and Old Terran shareholders were "requested" to execute and deliver the "Written Consent of the Common and Preferred Stockholders of Terran Orbital Corporation." That was the only S-4 or prospectus material sent to Plaintiffs and the class to solicit their consents.

61. The Consent Solicitation provided by Old Terran to its shareholder employees stated:

> As you may be aware, on October 28, 2021, following approval of its Board of Directors, Terran Orbital Corporation ("TOC") entered into a Merger Agreement (the "Merger Agreement") with Tailwind Two Acquisition Corp. ("TW2"), in which TOC will merge with Titan Merger Sub, Inc., a wholly-owned subsidiary of TW2, with TOC continuing as the surviving corporation (the "Merger"). Pursuant to the terms of the Merger Agreement, TOC has entered into support agreements with certain common and preferred stockholders who have agreed to consent to the Merger and the related transactions contemplated thereby (the "Transactions") within two business days following the effectiveness of the Registration Statement/Proxy Statement (the "Effective Time") filed with the Securities and Exchange Commission in connection with the Transactions (the "Registration Statement"). The Effective Time is anticipated to occur on or about Monday, February 14, 2022. You can find material information regarding the Transaction at the following link, which contains the latest filed Registration Statement: https://www.sec.gov/Archives/edgar/data/1835512/000110465922017362/tm2133616-10.
>
> In order to help ensure that TOC receives the consent of sufficient stockholders for approval of the Merger and the Transactions under Delaware law, we are also seeking your consent to the Merger Agreement, the other transaction agreements and the Transactions, and request that you please execute and deliver the attached a Written Consent of the Common and Preferred Stockholders of Terran Orbital Corporation voting together as a single class approving the Merger Agreement, the other transaction agreements and the Transactions.

> Please sign the attached consent and deliver it to TOC by the close of business on Tuesday, February 15, 2022, but do not date the signature page. If we receive your executed signature page prior to the Effective Time, TOC will hold your signature page in escrow until the Effective Time.[5] Your signature page will be automatically released at such Effective Time and will be dated as of such date and attached to the written consent.

62. Stockholders were instructed to "not date the signature page" so that Old Terran could insert date for the shareholder.

63. By structuring the written consents as per above, Old Terran and the Old Terran D&O Defendants coerced Plaintiffs and the class into forfeiting their appraisal rights before they had adequate information about their comments and before they knew what the final merger terms would be.

64. The Old Terran D&O Directors were obligated to follow Delaware law with respect to the written consents for approval of the Merger, included by allowing a right of revocation and informing stockholders of their appraisal rights.

65. Under DGCL 228, a shareholders' consent is revocable unless made non-revocable. Old Terran directors did not allow any revocations of written consents. Accordingly, the written consents were not compliant with DGCL. The Old Terran Directors collected written consents using solicitations materials that were materially false and misleading and which failed to advise Old Terran shareholders of their statutory appraisal rights.

66. The February 10, 2022 S-4 had a Section entitled "Appraisal Rights" (p. 109). That section failed to inform Plaintiffs and the class of their appraisal rights under Delaware laws. Instead that section stated only as follows:

---

[5] The "Effective Time" referred to in the solicitation above is not the same as the "Effective Date" referred to in the consent solicitation herein, the latter which denotes the closing date of the Merger and date on which Legacy TOC shares were converted into New TOC shares.

> Tailwind Two Shareholders have no appraisal rights in connection with the Business Combination or the Domestication under the Cayman Islands Companies Act or under the DGCL.

67. The February 10, 2022 S-4 did not include among "Annex" "A" through "K" any information concerning Delaware's appraisal law or Old Terran common stockholder rights to appraisal.

68. Under Section 262 of the DGCL, Plaintiffs and the class had appraisal rights provided Plaintiff and class members strictly complied with Section 262 procedures. Among other conditions to exercising the right of appraisal was that said stockholder "must not have voted in favor of the adoption of, or consented to, the Merger Agreement or the Merger."

69. The exercise of appraisal rights would have entitled Plaintiffs and class members to the "fair value" of the Old Terran shares which at the time was greater than the consideration offered in the Merger.

70. The Consent Solicitation sent to Plaintiffs and the class did not advise Plaintiffs and class members of their appraisal rights nor did it inform them that a vote in favor, or consent to, the adoption of the Merger Agreement or the Merger would result in the loss of appraisal rights.

71. Section 262(d)(1)-(2) requires corporations to notify shareholders of the right to seek appraisal and to provide a copy of the appraisal statutes to the shareholders by the "constituent corporation" (*i.e.* Old Terran) before the effective date of the Merger.

72. Defendants admitted that Plaintiffs and the class were entitled to appraisal rights and notice thereof when Marc Bell sent a "Confidential Notice of Action by Written Consent, Merger And Appraisal Rights" dated April 1, 2022 which was after all Plaintiffs and class

members had been solicited to consent, and did consent, to the Merger Agreement and Merger thus precluding exercise of appraisal rights.

73. The foregoing acts and omissions constituted non-exculpated breach of fiduciary duties of loyalty and candor by these Defendants who acted to advance their own self-interest and self-interest of TTAC and TTAS at the expense of Plaintiffs and the class.

74. The merger announcement took many Terran Orbital employees by surprise. It was the first time many of them, including class members, had heard about Terran Orbital's SPAC plans, or that negotiations were that far advanced. Employees and other private shareholders of Terran Orbital grew eager for the chance to finally be able to sell their New TOC stock.

75. When Plaintiffs and other class members were solicited to consent to the Merger by Old Terran they were referred to the February 14, 2022 S-4, and a link was provided. Among other things, the S-4 provided the following information to Plaintiffs and the Class about how their Old Terran common stock would be converted to New Terran common stock that would be registered and freely tradeable:

> On the Closing Date, at the Effective Time, Merger Sub will merge with and into Terran Orbital (the "Merger"), with Terran Orbital as the surviving company in the Merger and, after giving effect to such Merger, Terran Orbital shall be a wholly-owned subsidiary of Tailwind Two, which will change its name to "Terran Orbital Corporation" ("New Terran Orbital") substantially concurrently with the Effective Time. <u>In accordance with the terms and subject to the conditions of the Business Combination Agreement, at the Effective Time, each outstanding share of Terran Orbital will be automatically converted into the right to receive a number of shares of New Terran Orbital Common Stock (as defined in the accompanying proxy statement/prospectus), based on the Exchange Ratio (as defined in the accompanying proxy statement/prospectus). [Emphasis suppled].</u>

76. In the S-4, which incorporated by reference the Merger Agreement, Plaintiffs and class members were told that the consummation of the Business Combination was conditioned upon, among other things:

> (i) the approval by our shareholders of the Condition Precedent Proposals being obtained; (ii) approval of the Business Combination Agreement and the Merger by the Terran Orbital stockholders; (iii) the applicable waiting period under the HSR Act relating to the Business Combination Agreement having expired or been terminated; (iv) Tailwind Two having at least $5,000,001 of net tangible assets (as determined in accordance with Rule 3a51-1(g)(1) of the Exchange Act) after giving effect to the transactions contemplated by the Business Combination Agreement, the PIPE Financing and the Debt Financing; (v) the Net Debt Condition; (vi) <u>the approval by NYSE or Nasdaq of our initial listing application in connection with the Business Combination</u> (also see "Risk Factors — The NYSE or Nasdaq may delist New Terran Orbital's securities from trading on its exchange, which could limit investors' ability to make transactions in its securities and subject New Terran Orbital to additional trading restrictions."); (vii) <u>the effectiveness of the registration statement of which this proxy statement/prospectus forms a part</u>; (viii) the consummation of the Domestication; (ix) <u>the requisite consents have been obtained from Terran Orbital's equity holders and noteholders</u>; (x) either (a) the FP Note Purchase Agreement shall have been executed and the financing pursuant to such agreements shall be available to Terran Orbital on the terms provided in the FP Note Purchase Agreement, or (y) definitive documents shall have been executed by Terran Orbital with respect to alternative financing arrangements mutually acceptable to Terran Orbital and Tailwind Two; and (xi) the absence of a Terran Orbital Material Adverse Effect.

None of the foregoing conditions were ever waived.

77. The "Effective Time" was defined in the Merger Agreement Plan as such date and time when the Certificate of Merger is filed with the Delaware Secretary of State or some other later time agreed by the parties to the Plan. That occurred on March 28, 2022 and the "Effective Time" was thus March 28, 2022. The fact that the Certificate of Merger was signed and filed signifies that all of the conditions for conversion of Old Terran stock to New Terran stock on the

Effective Date had been met and according to Del. Ch. 158, certificates of New Terran stock should have been issued to Plaintiffs and the class on that date.

78. Plaintiffs and class members were informed that Old Terran's board of directors adopted a resolution recommending that the stockholders of Old Terran to approve the adoption of the Merger Agreement but information about reasons for or against the merger were not provided.

79. At the Effective Time, according to all information provide to Plaintiffs and the Class, all Old Terran common stock and Preferred Stock were to have been automatically converted into the right to receive New Terran common stock equal to the Exchange Ratio (as defined in the Merger Agreement) and thereafter all Old Terran common shares would "cease to have any rights" except as otherwise expressly provided in the Plan or under applicable law.

80. The Merger Agreement expressly provides that each Company shareholder was "entitled to receive their portion of the Transaction Share Consideration" on the Closing Date defined at Merger Agreement § 3.01, which was prior to the Effective Date and both TTAC and TOC were obligated under the Merger Agreement "to take all necessary actions to cause the applicable portion of the Transaction Share Consideration to be issued to the applicable Company Stockholder in book entry form on the Closing Date." This provision was contrary to Del C. 158 and also independently constituted a breach of fiduciary duty of loyalty to Old Terran stockholders because it would give TTAC shareholders receiving New Terran stock a head start on selling over the Old Terran shareholders.

81. All Defendants knew that the first day sale by Old Terran employees of their common stock could depress the market for New TOC common stock for TTAC holders intent

on selling. Defendants admitted this knowledge in an S-1 issued days after the Effective Date of the Merger:

> **Future sales, or the perception of future sales, by New Terran Orbital or its stockholders in the public market following the Business Combination could cause the market price for New Terran Orbital Common Stock to decline.**
>
> The sale of shares of New Terran Orbital Common Stock in the public market, or the perception that such sales could occur, could harm the prevailing market price of shares of New Terran Orbital Common Stock. These sales, or the possibility that these sales may occur, also might make it more difficult for New Terran Orbital to sell equity securities in the future at a time and at a price that it deems appropriate.
>
> Upon consummation of the Business Combination, and subject to the following assumptions, New Terran Orbital would have a total of approximately 165,441,640 shares of New Terran Orbital Common Stock outstanding, assuming no redemptions, (i) 112,574,014 shares of New Terran Orbital Common Stock are issued to the holders of securities of Terran Orbital at Closing, which would be the number of shares of New Terran Orbital Common Stock issued to these holders if Closing were to occur on February 9, 2022; (ii) 4,662,217 shares of New Terran Orbital Common Stock are issued to the Debt Providers; (iii) 5,080,409 shares of New Terran Orbital Common Stock are issued in the PIPE Financing; (iv) no Public Warrants, Private Placement Warrants or Debt Provider Warrants issued in connection with the Business Combination to purchase New Terran Orbital Common Stock that will be outstanding immediately following Closing have been exercised; (v) no options to purchase New Terran Orbital Common Stock outstanding as of February 9, 2022 have been exercised; and (vi) no restricted stock and restricted stock unit awards that will be outstanding immediately following Closing have been converted into common stock. All shares issued in the Merger will be freely tradable without registration under the Securities Act and without restriction by persons other than New Terran Orbital's "affiliates" (as defined under Rule 144 of the Securities Act, "Rule 144"), including New Terran Orbital's directors, executive officers and other affiliates.

82. On February 28, 2022, Old Terran officer Max Kiejdan sent an email to Plaintiff Carnahan telling him:

> Terran will use a TBD broker to set up accounts for all existing Terran shareholders. Once the deal closes, the accounts will hold the public company share for each Terran shareholder and transfer once a 6 month lock-up period is over.

83. It was not until March 29, 2022, that Mr. Carnahan was told by Old Terrans Hillary Hageman that his shares were not subject to a lock-up and that instead of Terran "setting up accounts for all existing Terran shareholders" which "once the deal closes . . . will hold the public company shares for each Terran shareholder," in fact the process would require a multi-step process involving Continental Stock Transfer & Trust Company which could eventually result in a transfer of shares to each Plaintiffs' "personal brokerage account."

84. Plaintiffs and class members were not informed of all material facts regarding the exchange of Old Terran stock for New Terran stock in the S-4 or consent solicitations for their vote.

85. The S-4 was materially false and misleading because Plaintiffs and the class were informed that:

(a) The S-4 represented that after the merger, even considering "maximum redemption," of TTAC shares, the "cash to balance sheet" of New TOC would be $179.1 million. Instead, as revealed by New TOC's Form 10-Q filing after the merger, as of March 31, 2022 (only five business days after the merger) New TOC's "cash and cash equivalents" was only $76,654,000;

(b) The S-4 represented that there was a maximum redemption condition of 85%. However, the ultimate redemption rate was over 95% and New Terran realized only $29 million from TTAC non redeemed shares;

(c) The S-4 and subsequent Form 425 prospectuses failed to disclose or fully explain the effects on New TOC's financial condition of the fact that of the $50.8 PIPE financing

prominently disclosed in S-4, $30 million of that financing was to be returned to PIPE investors over 16 quarters at the rate of $1.875 million per quarter even though the PIPE investors to whom the $30 million would be returned would still receive their New Terran shares and such dilution was not fully disclosed or explained in the S-4 or subsequent Form 425;

(d) It was not disclosed or explained to Plaintiffs and class members that on March 25, 2022, the Parties to the merger amended the Merger Agreement to delete the condition to consummation of the Transactions contemplated by the Merger Agreement that the "Net Debt" equal $40,000,000 or less and the amendment also added a condition that the maximum of TTAC redemptions shall not be greater than 85% of the aggregate number of Class A shares of TTAC eligible for redemption being redeemed. The maximum redemption percentage as a condition of the merger was 85% but in fact the parties to the amendment were allowed to, and <u>waived</u>, that condition without making any Form 425 explanatory disclosure and that TTAC stockholders redeemed their TTAC (receiving $10.28 in cash) shares in a greater percentage than 85% thus increasing the dilution of Old Terran shareholders;

(e) It was not disclosed or explained to Plaintiffs and class members that after the February 14, 2022 S-4 was issued, the parties to the Merger revised the lock up agreement in the Merger Agreement to release an additional 2,400,000 shares of New TOC issued to Beach Point, an affiliate of Old Terran director from the lock-up which could be sold on March 28, 2022;

(f) It was not disclosed or explained to Plaintiffs and class members that by the TTAC redemption date of March 23, 2022, 97.9% of TTAC public shareholders had redeemed their TTAC stock and withdrawn their cash which was far more than the 85% maximum redemption original condition to the merger disclosed in the S-4; and

(g) It was not disclosed or explained to Plaintiffs and class members of the effect of the fact that after the S-4 was effective and specifically on March 25, 2022, Beach Point Capital exchanged the Old Terran debt it held for New Terran common stock and as consideration received 2.4 million shares of New Terran common stock.

86. As a result of the huge number of redemptions by TTAC shareholders, all TTAC and Old Terran's officers and directors knew that after the Merger, New Terran stock would face enormous selling pressure. All Defendants wanted to avoid adding any additional selling pressure from Plaintiffs and class members' immediate sale of their New Terran stock. Accordingly, they conspired and acted or intentionally failed to act to allow Plaintiffs and class members to sell their New TOC stock on the Effective Date.

87. Before the merger in February 2022, Old Terran was valued at 1.3 billion in SEC filings. Given that only 116,581,883 New Terran shares were issued to Old Terran stockholders in the Merger, assuming a $10 per share value of New Terran, Old Terran holders received in the aggregate only $1.16 billion for their equity, a $150,000,000.00 dilution hit. In reality, the dilution was much much more given that TTAC contributed only $29 million dollars to New Terran after redemption but TTAC shareholders received over 20 million New Terran shares worth $10 each.

88. The Merger was poorly received by TTAC's SPAC investors who redeemed their shares in such great quantities that the maximum redemption condition previously written into the Merger Agreement as a condition to the closing of the merger and the funding provided by Francisco Partners was waived by the respective parties. None of this was disclosed on a timely basis in any S-4 or supplement or Form 425 to holders.

89. The TTAC shareholder vote was held on March 22, 2022 and the Merger was approved.

90. As a result of the Merger, all of Old Terran's issued and outstanding common stock was converted into shares of New Terran common stock using an exchange ratio of 27.585 shares of New Terran's common stock per each share of Old Terran Orbital's common stock.

91. On March 25, 2022, New Terran announced that its stock was cleared to begin trading "Monday" on the NYSE under the symbol LLAP. By afternoon trading the stock fell by 13%

92. Beginning on March 28, 2022, the Company's common stock and public warrants began trading on the New York Stock Exchange (the "NYSE") under the symbols "LLAP" and "LLAP WS," respectively. But Plaintiffs and class member's stock was not eligible for trading until April 4th at the earliest.

93. After the merger closed, New Terran reported that it received approximately $255.4 million of gross proceeds, purportedly comprised of $80.2 million combined total of gross equity proceeds from Tailwind Two's cash-in trust ($29.4 million) and a private placement ("PIPE") of ordinary shares ($50.8 million). Shareholders were shocked to learn that redemptions had exceeded the $293.3 million in redemptions under a "maximum redemption scenario" as reported in the February 14, 2023 S-4 (and never revised), New TOC realized redemptions were $316.7 million as of the closing of the merger.

94. On April 1, 2022, Plaintiffs and class members received emails from New Terran's transfer agent, which informed them as follows:

> "Attached is your TERRAN ORBITAL CORPORATION book entry confirmation. If your shares are book-entry and NOT restricted you may provide a copy of this confirmation to your

> broker who can initiate an elective transfer of shares via the DRS Profile Module into your brokerage account."

95. This was not the process disclosed in the Consent Solicitations or S-4.

**THE PLAINTIFFS' HOLDINGS**

96. During their employment tenure, Plaintiffs were granted options to purchase shares of Old Terran common stock subject to vesting and exercise provisions applicable thereto.

97. Plaintiffs exercised all options into Old Terran common stock in advance of the Merger.

98. According to the terms of the Consent Solicitations and S-4 used to solicit Plaintiffs' and class members' vote in favor of the merger which incorporated the Merger Agreement terms, New Terran shares should have been available to Plaintiffs and class members on the Effective Date.

99. Plaintiffs' shares were not available for trading until after April 5, 2022 by which time the share value of LLAP had dropped to approximately $6 per share.

**CLASS ACTION ALLEGATIONS**

100. Plaintiffs, all former employee and former stockholders in the Company, bring this action individually and as a class action pursuant to Rule 23 of the Fed. R. Civ. P. on behalf of themselves and all record and beneficial holders of Old Terran common stock who (a) signed the consent solicitations to approve the Merger and (b) who received their New Terran common stock in exchange for New Terran common shares issued from the materially false and misleading S-4 and subsequent Form 425s used to register New Terran shares. Excluded from the Class are all directors and officers of Old Terran, New Terran, TTAC, TTAS and its members and any controlling shareholders thereof.

101. This action is properly maintainable as a class action.

102. A class action is superior to other available methods of fair and efficient adjudication of this controversy.

103. The Class is so numerous that joinder of all members is impracticable.

104. The number of members of the Class is believed to be in the thousands, and they are likely scattered across the United States. Moreover, damages suffered by individual members of the Class may be small, making it overly expensive and burdensome for individual members of the Class to pursue redress on their own.

105. There are questions of law and fact which are common to all members of the Class and which predominate over any questions affecting only individuals, including, without limitation:

(a) whether Old Terran and the Old Terran D&O Defendants owed fiduciary duties to Plaintiffs and the Class;

(b) whether Old Terran and the Old Terran D& O Defendants breached their fiduciary duties to Plaintiffs and the Class;

(c) whether TTAC and the TTAC D&O Defendants issued materially false and misleading Registration Statements and other prospectus materials;

(d) whether TTAC and the TTAC D&O Defendants are liable under the '33 Act in connection with the issuance of New TOC common stock from a materially false and misleading Registration Statement and Prospectus;

(e) whether Old Terran and the Old Terran D&O Defendants breached fiduciary duties with respect to the Consent Solicitation and/or the exchange of Old Terran common stock into New Terran common stock for class members;

(f) the existence and extent of any injury to the Class or Plaintiffs caused by any breach of fiduciary duty and/or violations of securities laws; and

(g) the proper measure of the Plaintiffs' and Class members' damages.

106. Plaintiffs' claims and defenses are typical of the claims and defenses of other members of the Class, and Plaintiffs have no interests antagonistic or adverse to the interests of other members of the Class. Plaintiffs will fairly and adequately protect the interests of the Class.

107. Plaintiffs are committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

108. Defendants have acted in a manner that affects Plaintiffs and all members of the Class alike, thereby making appropriate relief with respect to the Class as a whole.

109. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants; or adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members or substantially impair or impede their ability to protect their interests.

## COUNT I

### Violation of Section 11(A) of the Securities Act Against TTAC And The TTAC Defendants Who Signed the Registration Statement And Against TTAS For Controlling Person Liability Under Section 15

110. Plaintiffs repeats and realleges each and every allegation above as if set forth in full herein.

111. Section 11(a) of the Securities Act of 1933 imposes liability on the issuer and signatories of a registration statement when, the registration statement contains an untrue

statement of material fact or omits a material fact required to be stated therein or necessary to make the statements therein not misleading.

112. The Defendants named in this Count herein authored and/or issued the Proxy-Prospectus and S-4 Registration Statement which contained materially false and misleading statements.

113. Each Class Member acquired a New Terran stock pursuant to this Registration Statement.

114. The Registration Statement and the Prospectus Supplements and Form 425s contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

115. TTAC/New Terran is the registrant for the stock registered in the Registration Statements and issued to Plaintiffs and class members. As issuer of the securities, TTAC is strictly liable to Plaintiffs and the Class for the misstatements and omissions.

116. Individual Defendants named in this Count signed one or more Registration Statement individually or through an attorney-in-fact and, therefore, are liable pursuant to Section 11 of the Securities Act for any material misstatements of fact or failure to disclose facts necessary to make the statements made in the Registration Statement and the Prospectus not materially misleading.

117. Defendant TTAS, the Sponsor, by virtue of its controlling interest in TTAC and overlapping memberships of its partners and TTAC directors and its role in structuring and executing completion of the Merger had the power to control the contents of the Registration Statement and Prospectus and in fact exercised such power and thereby caused the losses herein.

118. In connection with the issuance of New Terran shares, the Defendants named in this Count used the means and instrumentalities of interstate commerce and the United States mails.

119. By reasons of the conduct herein alleged, Defendants named in this Count violated, and/or controlled a person who violated, Section 11 of the Securities Act.

120. By virtue of these violations, Plaintiffs and the other members of the Class have sustained damages.

121. Less than one year has elapsed from March 28, 2022 (the time that Plaintiffs could have discovered the facts for each element of the claims) upon which the original complaint was based to the time that the original Complaint was filed. Less than three years elapsed between the time that the securities upon which this Count is brought were offered and the time Plaintiffs filed this complaint.

## COUNT II

### Against TTAC For Violations Of 8 Delaware C. Section 158<br>Wrongful Refusal To Issue Stock Certificates To Old Terran Common Stockholders

122. Under Delaware law, 8 Del. C. § 158, TTAC was required to issue unrestricted share certificates to Plaintiffs and the Class and to facilitate Plaintiffs' and the Class's transfers of their shares.

123. 8 Delaware C. § 158 provides in pertinent part:

> Every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of, the corporation by any 2 authorized officers of the corporation representing the number of shares registered in certificate form.

124. Plaintiffs and class members were all holders of Old Terran common stock certificates.

125. Defendants did not provide Plaintiffs and the class with shares of New Terran in certificate form.

126. Delaware law recognizes the existence of a claim for wrongful refusal to issue a stock certificate. *See Reeves v. Transport Data Communications Inc.*, (Del. Ch.) 318 A.2d 147 (1974).

127. In violation of Delaware statutory law, TTAC refused to issue certificated shares to Plaintiffs and the Class, thereby eliminating Plaintiffs' ability to timely sell their shares on the Effective date March 28, 2022.

128. TTAC's refusal to issue Plaintiffs and class members certificated shares on March 28, 2022 damaged Plaintiffs and the Class by preventing them from selling the shares at a time and price of their choosing.

129. Plaintiffs and the Class are entitled to damages to be determined.

**COUNT III**

**Against Old Terran And The Old Terran**
**D&O Defendants For Breach Of Fiduciary Duty**

130. Old Terran and the Old Terran Officer and Director Defendants owed fiduciary duties to Plaintiffs and the Class. Those duties require that they deal in good faith with Old Terran shareholders and make full and fair disclosure of all material facts to Plaintiffs and the Class in connection with the Consent Solicitation and issuance of New Terran shares to Plaintiff and the Class and not act disloyally.

131. Old Terran and the Old Terran Officer and Director Defendants breached their fiduciary duties of care, candor and loyalty, including the duty to act in good faith, by: (a) breached fiduciary duties by soliciting shareholder action through materially false and misleading consent solicitation; (b) failing to give the required statutory notice of appraisal rights

to Plaintiff and the class; (c) failing to require issuance of certificates of New Terran shares to Plaintiffs and the Class on the Effective Date; (d) failing to inform Plaintiffs and the Class of the protracted process which New Terran would use to exchange New Terran stock for Old Terran stock after the closing of the Merger; (e) failing to structure the process to preclude TTAC shareholders from getting a "head start" over Plaintiffs and the class in selling their New Terran shares; (f) failing to allow the revocation of Plaintiffs and class members consents; (g) failing to provide information to Plaintiffs and the class about changes in terms of the merger agreement occurring in March 2022 which worked a financial disadvantage on Plaintiffs and the class; and (h) disloyally preferring the interests of TTAC and its sponsor by failing to allow revocation of consents and by inducing Plaintiffs and the class to forfeit their appraisal rights by consenting to the Merger without the benefit of full and fair disclosure of all material facts.

132. As a direct and proximate result of the foregoing breaches of fiduciary duties, Plaintiffs and the Class have sustained damages including the loss of the opportunity for appraisal and the loss of value of delaying their sales of New Terran stock.

## COUNT IV

### Aiding and Abetting a Breach of Fiduciary Duty (Against TTAC, TTAS (And Its Controlling Persons) and the TTAC Officers and Directors)

133. Plaintiffs repeats and realleges each and every allegation above as if set forth in full herein.

134. As set forth above, the Old Terran and the Old Terran Officers and Directors breached their fiduciary duties to the Plaintiffs and the class.

135. The Defendants named in this Count were aware of the fiduciary obligations to Plaintiffs and the class owed by Old Terran and the Old Terran D&O Defendants and knew that

the said Defendants breached their duties through the use of materially false and misleading consent solicitation. The Defendants named in this Count knowingly participated in the Old Terran Defendants breach of those fiduciary obligations by failing to cause the S-4 to inform Plaintiffs and the Class of all material facts and failure to issue share certificates.

136. As a result, class members lost the opportunity to seek appraisal and were unable to trade their New Terran shares once they began trading, and their equity lost 50% of its value in the first few trading weeks.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment:

A. Certifying this action as a class action;

B. With respect to all Defendants, awarding damages in an amount to be proven at trial, but not less than the difference between the value of the class members shares of Terran Common Stock when it first went public and the value of the Common Stock as of the date they had access to sell;

C. Awarding other damages and forms of remedies as appropriate;

D. Awarding statutory prejudgment interest;

E. Awarding costs and reasonable attorney’s fees as permitted under Delaware law; and

F. Ordering any other and further relief that the Court deems just and appropriate.

Dated: July 7, 2023

*Respectfully submitted,*

**SQUITIERI & FEARON, LLP**

*/s/ Lee Squitieri*
Lee Squitieri
305 Broadway
7th Floor
New York, New York 10007
=
(212) 421-6492
lee@sfclasslaw.com

**MOORE KUEHN, PLLC**
Fletcher Moore
Justin Kuehn
30 Wall Street, 8th Floor
New York, New York 10005
(212) 709-8245
fmoore@moorekuehn.com
jkuehn@moorekuehn.com

*Attorneys for Plaintiffs*